Leonard L. LISIECKI, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

Appeal No. 85-899.

United States Court of Appeals, Federal Circuit.

Aug. 2, 1985.

Kevin M. Grile, American Federation of Government Employees, Northfield, Ill., for petitioner.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Kathleen A. Flynn, Washington, D.C.; Clara A. Williamson, Federal Home Loan Bank Board, Winston Salem, N.C., of counsel.

Before RICH and BENNETT, Circuit Judges, and MILLER, Senior Circuit Judge.

BENNETT, Circuit Judge.

Petitioner appeals the final decision of the Merit Systems Protection Board (MSPB or board), 23 M.S.P.R. 633 (1984), which reversed the initial decision of the presiding official, issued May 29, 1984, and sustained the action of the Federal Home Loan Bank Board (agency) in removing petitioner for unacceptable performance. We affirm.

## BACKGROUND

This case presents a narrow but vitally important issue of statutory construction of first impression in this court, namely, whether the MSPB has the authority to review and mitigate the severity of reduction-in-grade (demotion) or removal sanctions imposed by an employing agency in an action taken for unacceptable performance under 5 U.S.C. § 4303 (1982).[1] The board answered the question in the negative in this case arising from facts summarized as follows.

---

1. For convenience, 5 U.S.C. § 4303 (1982) is set forth in the Appendix.

Petitioner Lisiecki became a career employee with his agency in 1972. Eventually, he became a savings and loan examiner, GS–11, and held that position until he was removed on January 7, 1984. His duty station was in Cleveland, Ohio.

Lisiecki's supervisor evaluated his performance in 1983 and found him deficient in "critical element 6." This element required examiners to develop final reports and documents in compliance with an agency manual to facilitate supervisory action. Mr. Lisiecki was then placed on a corrective work plan for 180 days. At the end of that period he was still considered unsatisfactory on element 6 and was given a warning notice of removal in accordance with 5 U.S.C. § 4303, based on unacceptable performance.[2] He was thereafter separated.

An appeal to the MSPB followed and a hearing was held before a presiding official who found that substantial evidence supported the rating of Mr. Lisiecki as unacceptable in critical job element 6. The presiding officer, however, citing *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1981), held that the agency exceeded the tolerable limits of reasonableness in removing rather than demoting [3] Lisiecki, in view of certain circumstances he considered as mitigating. His decision was that Lisiecki should have been demoted to GS–09 and he so ordered in reversing the agency removal action.

The agency filed a petition for review of the presiding official's decision alleging that the MSPB lacked the authority to review and mitigate penalties in actions taken under 5 U.S.C. § 4303 and that the board's decision in *Douglas* was no authority to the contrary. The board, by a 2–1 vote on October 22, 1984, agreed with the agency that it lacked this power, and on that basis, reversed its presiding official and sustained the agency's removal action. This appeal to the court seeks to overturn the final decision of the board and to obtain petitioner's reinstatement or reassignment to a GS–09 position as an examiner with his agency. In the alternative, it is requested that the case be remanded to the MSPB on the issue of whether the penalty approved by the board was too harsh in light of the presiding official's findings.

Whether the petitioner's performance was unacceptable in the position he held at the time of his removal is not now in issue. The presiding official found the performance was unacceptable and, on review, the board agreed. We do not disturb that finding. Petitioner had the right under sections 1205 and 7701 of title 5 to appeal the agency action. On review, as an integral part of the appeal process, did MSPB have the right to mitigate the penalty imposed by the agency for the established unacceptable performance? In deciding this issue, it is not necessary to determine what standards would be applicable if the board had mitigation authority or whether, if it did have such authority, it could modify a removal in the manner petitioner seeks or mitigate by substituting a suspension or some other sanction. Finally, it is unnecessary to address any issues concerning whether petitioner should have been removed under title 5, chapter 75, for performance-based reasons because the provisions of that chapter were not invoked in this case. *See Lovshin v. Department of the Navy,* 767 F.2d 826 (Fed.Cir.1985) (in banc).

The issue before the board on mitigation authority was not a simple one and it invited, by notice in the *Federal Register,* the filing of amici curiae briefs. Seventeen such briefs were filed by government agencies and departments and three unions of

---

**2.** Unacceptable performance is defined in 5 U.S.C. § 4301(3) as "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position." *See also* FPM 430–3 (1980).

**3.** For brevity's sake the term "demote" will be used instead of the statutory term "reduction in grade." 5 U.S.C. § 4303(a), (b).

government employees. They also addressed other issues with which we are not concerned. The briefs of the Office of Personnel Management and most federal agencies contended that the board had no authority to mitigate penalties imposed pursuant to chapter 43, 5 U.S.C. § 4303, because to do so would frustrate congressional intent in the enactment of the Civil Service Reform Act, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.). Further, it was argued that the board's opinion in *Douglas,* wherein it held that it had the authority to mitigate penalties imposed by agencies in chapter 75 actions for misconduct, does not extend to chapter 43 actions for performance appraisal. The three unions and two agencies contended just the opposite. With all of this help and after its own study of the matter, the board concluded, as noted, that its authority did not extend to mitigation under chapter 43.

The MSPB's concern with the difficulty and importance of the issue to be decided is understandable because the Reform Act is silent on it, and the legislative history does not address the issue explicitly. Nevertheless, the legislative history is highly instructive, sufficiently so as to support the board's result, which we affirm.

I

The Senate and House committee reports, the conference reports,[4] and the floor discussions demonstrate that the Reform Act was the most comprehensive overhaul of the civil service since the (Pendleton) Civil Service Act in 1883. The Reform Act was the result of in-depth studies over many months.[5] This effort was necessitated by the fact that no systematic congressional review of the system had been

attempted in almost a century and, with the great growth in the number of federal employees, many new problems had developed which demanded serious attention. We address here only one of those problems—the difficult, almost impossible, problem of discharging employees for poor performance. The patchwork of statutes, regulations, rules, and judicial restrictions built up over time had conspired, in effect, to tie the hands of the personnel managers. The "[i]nordinate procedural requirements and unreasonable standards" were condemned. S.Rep. No. 969, 95th Cong., 2d Sess. 40, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2762. The temptation was to keep an unsatisfactory worker on the payroll rather than go through the protracted hassle of discharging him, with no guarantee that the effort would be successful. This happened too often, and the public suffered. *Id.* at 1–4, U.S.Code Cong. & Ad.News at 2723–26; *see also* Remarks of Senator Abraham A. Ribicoff and Senator James R. Sasser, 124 Cong.Rec. 14,267, 14,281 (1978).

One of the devices in the Reform Act to accommodate the problem described was a new chapter 43 in title 5, entitled Performance Appraisal. New standards were authorized for evaluating performance with sanctions of removal or demotion for unacceptable performance. 5 U.S.C. §§ 4301–4308. While the authority of managers was strengthened, the Reform Act was careful to protect the employees by due process procedures for notice, charges, opportunity to respond orally and in writing, representation by counsel or other representative, and a written appealable decision, among other things. *Id.* at § 4303. Any tension between the rights of employees and managers was resolved from the standpoint of the public's right to have

---

4. S.Rep. No. 969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723; H.R. Conf.Rep. 1717, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860.

5. In addition to congressional studies and extensive hearings, the President's Personnel Manage-

ment Project made an exhaustive study involving "thousands of experts and members of the public." S.Rep. No. 969 on S. 2640 (which was passed), 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2724.

competent, dedicated workers on its payroll for the promotion of "efficient and effective Government." S.Rep. No. 969 at 4, U.S.Code Cong. & Ad.News at 2726; 5 U.S.C. § 7101(b). Congress sought and achieved a balance between an agency's ability to take prompt action on the substance of an employee's performance on the one hand, and an employee's procedural protections on the other. *Id.* at 40, U.S. Code Cong. & Ad.News at 2762.

The House and Senate committee reports on the Reform Act are very similar in most of the respects material to the present case. The Senate bill, however, is the one that passed. For convenience, reference is made to some of the language in the Senate committee report to illustrate the concepts important here. The conference reports do not change the thrust of the Senate committee discussion of chapter 43 which follows. In its discussion of section 203, codified in 5 U.S.C. § 4303, the Senate report observed that entirely new procedures were being established for handling employees whose job performance failed to meet acceptable standards.

> One of the chief differences between the procedures currently applicable at the agency level and the proposed procedures concerns the standard governing the agency's action. Under current law, an employee may be dismissed for unacceptable performance only if dismissal would improve efficiency of the service. As a practical matter, agencies have found it very difficult to prove this to the degree required by courts through a series of judicial decisions. Section 4303(a) imposes a new standard. It is "performance which fails to meet established requirements in one or more critical elements of the job." The Committee intends that this new standard should not be governed by the existing case law defining the present standard, "such cause as will promote the efficiency of the service." [6]

S.Rep. No. 969 at 43, U.S.Code Cong. & Ad.News at 2765.

> The agency action cannot be ultimately upheld under any circumstances unless the agency first makes a prima facie case justifying its action. Once the agency meets this initial burden, the employee will be expected to introduce his own evidence, discredit the record made by the agency, or present whatever arguments he wishes. Following the submissions by both the employee and the agency, the Board will decide the case. At such point, the burden of persuasion, or the risk of nonpersuasion, will be on the employee.

*Id.* at 44, U.S.Code Cong. & Ad.News at 2766.

> Under this standard the Board must find that there is reasonable basis for the agency's decision whenever it concludes that a reasonable man could—on the basis of the record—have acted as the agency did, even if it is also possible to conclude that another course of action would also have been reasonable. In reviewing agency action taken under this section, both the Board and the courts should give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards.

*Id.* at 45, U.S.Code Cong. & Ad.News at 2767.

In the discussion of appellate review, the report says that while due process procedures are intended by the Reform Act—

> [a]t the same time, they are intended to give agencies greater ability to remove or discipline expeditiously employees who engage in misconduct, or whose work performance is unacceptable. Henceforth, the Board and the courts should only reverse agency actions under the new procedures where the employee's

---

**6.** The requirement that the adverse action promote the "efficiency of the service" originated

with the Lloyd-La Follette Act, ch. 389, § 6, 37 Stat. 539 (1912).

rights under this title have been substantially prejudiced.

*Id.* at 51, U.S.Code Cong. & Ad.News at 2773.

The Reform Act at 5 U.S.C. § 7701 permits an appeal to the board "from any action which is appealable to the Board under any law, rule, or regulation." It is provided in subsection (c)(1)(A) and (B) that the decision of the agency shall be sustained only if the agency's decision—

(A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

Section 7701(c)(2) provides, however, that an agency decision may not be sustained if the employee shows harmful error in application of the agency's procedures in arriving at its decision, or shows the decision was based on a prohibited personnel practice, or that it was not in accordance with law.

The stated purpose of the Reform Act, however, was to give agencies greater ability and flexibility to remove or to discipline employees who engage in misconduct (chapter 75) or whose work performance is unacceptable (chapter 43). Stated another way, it was to "[a]llow civil servants to be able to be hired and fired more easily, but for the right reasons." *Id.* at 4, U.S.Code Cong. & Ad.News at 2726; *see also Cornelius v. Nutt,* —— U.S. ——, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985).

Senate Report No. 969 and House Conference Report No. 1717 explain that section 7701 gives a heavier burden of proof to the agency when it seeks to take an adverse action against an employee for misconduct than when the action is based on unacceptable performance. "However, it is intended that the overall effect of the new standards will be fewer reversals by the Board or the courts of adverse actions taken by the agencies." S.Rep. No. 969 at 55, 1978 U.S.Code Cong. & Ad.News at 2777. Addressing judicial review, the Senate report states:

The Board's findings of fact shall be conclusive when supported by substantial evidence in the administrative record. In reviewing the Board's factual findings, the Court must determine whether the findings satisfy the particular standards of proof applicable to the agency action in question. Court review of the factual findings will be less vigorous therefore in the case of an action based on unacceptable performance ... than an action based on misconduct.... Likewise, agency actions should be reversed because the agency's procedures were in error only if the procedures followed substantially impaired the rights of the employees.

*Id.* at 64, U.S.Code Cong. & Ad.News at 2786.

Referring again to 5 U.S.C. § 7701(c)(1), which provides agencies with the lighter burden of "substantial evidence" in proving "unacceptable performance," to the presumptions expressed in legislative history in support of an agency's actions under chapter 43, and to rejection in chapter 43 actions of prior case law, we note that nevertheless an agency's action is not to be sustained under three circumstances spelled out in section 7701(c)(2) as follows: "harmful error [7] in the application of the agency's procedures in arriving at such decision," a decision based on prohibited personnel practices as described in section 2302(b), or where the decision is contrary to law. Thus, management has a strengthened hand but the employee is protected from arbitrary or unlawful abuse.

It is impossible and unnecessary to summarize here all that Congress has said on

---

7. Harmful error is such error as might have caused the agency to reach a conclusion different from the one reached. *See Cornelius v.*

*Nutt,* —— U.S. at —— n. 9, ——, 105 S.Ct. at 2888 n. 9, 2889 (citing 5 C.F.R. 1201.56(c)(3)) & n. 11.

the subject, but the foregoing brings into focus the main objectives it had. For the new chapter 43, Congress rejected out of hand the old chapter 75 procedures which had applied both to misconduct and to performance cases. Those procedures, tied as they were to the requirement to establish that an action against an employee must be for "the efficiency of the service," 5 U.S.C. §§ 7503, 7513, sometimes made the civil service a refuge for incompetent employees who, as a practical matter could not be discharged or demoted on account of the "inordinate," unrealistic maze of statutes, rules, regulations, and judicial restrictions. A new standard, "unacceptable performance" was proposed and adopted under chapter 43. If Congress had any intent that previously existing standards and procedures would carry over into chapter 43, there would have been little purpose in enacting it. The legislative history is explicit on this point. The dominant intent of chapter 43 was to "simplify and expedite procedures for dismissals of Federal employees whose performance is below the acceptable level within a comprehensive framework for performance evaluation." S.Rep. No. 969 at 10, U.S.Code Cong. & Ad.News at 2732. The legislative history repeatedly cautions that the old standards of review are not applicable under chapter 43 and, as noted, that the MSPB and the courts should "give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards." *Id.* at 45, U.S.Code Cong. & Ad.News at 2767.

## II

Chapters 43 and 75 are silent on the subject of mitigation. It is argued, therefore, that it is inconsistent for the board to have found that Congress silently approved of board mitigation of penalties in chapter 75 actions while silently disapproving them under chapter 43. This is a specious argument when the legislative history is con-

sidered. That history instructs us that prior standards under chapter 75 and prior case law developed thereunder do not apply to the new chapter 43, that the latter's purposes are new and different, and that the deference due agency actions under the new chapter should mean fewer board reversals and less vigorous court review.

 Chapter 43 gives to the agency discretion to select one of only two penalties, demotion or removal, for unacceptable employee performance. That discretion is not unfettered. It is measured by the mandated performance appraisal system, 5 U.S.C. §§ 4302, 4303; 5 C.F.R. §§ 430.-201–.301, the requirement that substantial evidence support agency action, 5 U.S.C. § 7701(c)(1); 5 C.F.R. § 1201.56, and due process procedural protections of sections 4303 and 7701(c)(2). These limitations also mark the boundaries of board review. Why should this not be so? What institutional competence does the board or the court have to tell the hundreds of government agencies whether any of their approximately 3 million employees are performing acceptably? The legislative history speaks clearly of the deference due agency actions in this area in order to expedite the purposes of chapter 43 for the removal of poor performers with a minimum of red tape in order to correct the historic evils in personnel practice so well articulated by congressional reports. Some deference is always due the interpretation of a statute by the agency entrusted with its administration. This is so even though the interpretation of the statute is not the only one which the court views as most reasonable. *Miller v. Youakin,* 440 U.S. 125, 144–45 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194 (1979); *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971); *Red Lion Broadcasting Co. v. Federal Communications Commission,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965); *Consumer Products Division,*

*SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039 (Fed.Cir.1985). Even so, courts are the final authorities on issues of statutory construction and we must reject an administrative construction inconsistent with statutory mandate or a policy Congress has sought to implement. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). In this case, because the issue is new, we will carefully scrutinize the MSPB decision in light of the language and intent of the Civil Service Reform Act.

■ Chapter 43 was the centerpiece of the Reform Act. As the board stated in its opinion in this case: "Adoption of the substantial evidence standard and the elimination of the efficiency of the service requirement for Chapter 43 actions comprise the cornerstone of this new statutory scheme." 23 M.S.P.R. at 641. This conclusion is fully supported by the legislative history and the well-considered board opinion. We cannot agree with petitioner that these are minor differences or that a change in the burden of proof is the only difference from chapter 75. To so hold would gloss the new chapter with mitigation authority long exercised under chapter 75. Congress knew what to say if such was its desire. But, it did not so speak. Enactment of the two quoted basic changes gives a clear indication of congressional intent to restrict the board's authority in reviewing chapter 43 actions. Mitigation would add a third and more intrusive review of agency action by the board. We decline to judicially legislate in this matter. The opening clause of section 4303(a) states: "Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance." *See* Appendix.

Surely, this suggests intent that additional procedural standards not identified, such as by judicial interpretation or by regulation or imposed by prior law, are not meant to be imposed on the agencies in section 4303 actions. *Wells v. Harris,* 1 MSPB 199, 1 M.S.P.R. 208, 225 n. 35 (1979). Chapter 43 has procedural and substantive safeguards to protect employees from unfair or illegal treatment and they have been mentioned earlier. Congress did not include board authority to mitigate a penalty chosen by the agency, which is supported by substantial evidence and imposed according to its published regulatory procedures without harmful error.

Congress did identify two situations where an agency's authority to discipline an employee is limited to a demotion or reassignment. Both are outside chapter 43. One is in chapter 33, under which an employee who does not satisfactorily complete the probationary period for a supervisory or managerial position in which he has been placed, is entitled to be assigned to a position no lower than the one he left to accept the higher position for which he failed to qualify. *See* 5 U.S.C. § 3321(b). *See also* 5 U.S.C. § 4303(f)(1); 5 C.F.R. § 315.907. The other situation arises under chapter 35 where it is provided that a career appointee in the Senior Executive Service (SES) who likewise fails to demonstrate fully successful executive performance is entitled to be placed in a position of equivalent tenure to the position occupied before appointment to the SES position. *See* 5 U.S.C. § 3594; 5 C.F.R. §§ 359.701, 359.702. Since these are the only statutory limitations on agency authority to remove an employee, it is reasonable to assume that they were the only mitigation steps that Congress intended for unacceptable performance. We assume, without deciding, that the board could monitor enforcement of these statutory guarantees but this is really not mitigation according to its own discretion and is mentioned only to illustrate the care with which Congress refrained from extending to the board any mitigation authority to be exercised on its own initiative.

### III

Since the MSPB held in *Douglas,* 5 MSPB 313, 5 M.S.P.R. 280, that it could

mitigate penalties imposed for misconduct in chapter 75 proceedings, the question arises as to whether the reasoning in that case should be extended to chapter 43 actions for unacceptable performance. We do not think so.

■ It is important not to ignore the vital distinctions between the relevant chapters of title 5. In chapter 43 the basic issue to be decided is whether the employee has continued to perform unacceptably in a critical job element after being given an opportunity to improve. If he has failed, he can be demoted or removed by his agency. The action taken is remedial. The congressional purposes behind this straight-forward procedure have been discussed. Substantial evidence will support the agency action. Under chapter 75, on the other hand, the agency must prove by a "preponderance of the evidence" that the employee committed the misdeeds with which he is charged, that imposition of discipline will promote "the efficiency of the service," and that the penalty selected is reasonable. Penalties here are of a punitive nature when imposed for misconduct. The difficulties of proof as required under chapter 75 are manifest and Congress was highly motivated to find another, better way to deal with unacceptable performance cases; hence chapter 43. Now we are confronted by this challenge as to what it intended, and with the suggestion that we should encumber the new chapter with old meanings not given to it by Congress.

The conclusion in *Douglas* that the MSPB could mitigate penalties assessed under chapter 75 was based on considerations not anywhere present under chapter 43. Three principal factors explain that decision: (1) the fact that the board's predecessor agency, the Civil Service Commission, had mitigated penalties in chapter 75 actions and that this authority was inherited by the board by virtue of Reorganization Plan No. 2 of 1978 at a time when chapter 43 did not exist; (2) the board's conclusion that the continued exercise of such authority under the subsequent Reform Act was not inconsistent with the statutory terms of chapter 75 or its legislative history; and (3) the historic relationship of the penalty to the efficiency of the service standard in chapter 75 actions. We hold that these grounds provide no basis whatever for the board to extend its holding in *Douglas* to chapter 43 actions, which have an entirely different genesis. We accept the board's discussion in regard to these issues.

Petitioner makes the further argument that it would be illogical and unfair not to let the board mitigate penalties under chapter 43 when it can do so under chapter 75, even for criminal conduct. But, we perceive it to be our responsibility to construe statutes so as to give full force and effect to what Congress intended. That intent here clearly was to allow an agency, with as few restrictions as due process would permit, to demote or remove an incompetent employee and replace him with a competent worker. Congress declared this as a merit system principle in 5 U.S.C. § 2301(b)(6). We adhere to this clear declaration of congressional purpose and reject the appeal to return to the old system Congress sought to replace with the new chapter 43.

■ Management best knows its needs and the potential of its employees to further an agency's statutory mission. To permit the MSPB to mitigate demotion or removal would vest it with management prerogatives not intended. Worse, it would permit the board to require an agency to retain an incompetent worker in situations where it proposed removal. Positions should be filled by those who can be expected to satisfy minimum job requirements. *Lisiecki* illustrates the problem. When removed in 1984 he was a GS–11 who had not been promoted since 1975. Most examiners in the agency became GS–12s. Yet, the presiding official ruled that he should be retained at a GS–9, the entry-level grade for examiners. When he was

removed he had been employed for almost 12 years by his agency. There is no record here that the agency had sufficient work for a permanent GS–9 who had demonstrated incapacity for meaningful advancement or whether there even was a GS–9 vacancy.[8]

■ The Reform Act establishes that Congress intended that employees should not have a vested right to a position but rather only those rights expressly stated by statute and regulation. The right to have MSPB review of the section 4303(a) sanctions for mitigation purposes is not one of those rights. This is the conclusion most in harmony with the Reform Act's overall design and purpose. No inherent or implied powers of the MSPB can be discerned to alter this result. Specifically, therefore, we reject the suggestion that such powers derive in any way from section 7701 (the board's authority to hear a case appealable under any law, rule, or regulation); or under section 4303(e) (which is derivative of section 7701); or under section 1205(a) (to "take final action" on any matter within its jurisdiction); or under section 7703(c) (for judicial review, generally, of agency actions).

### IV

The court has recently addressed in detail the interrelation of chapters 43 and 75. *Lovshin v. Department of the Navy*, 767 F.2d 826 (Fed.Cir.1985) (in banc). In that case it was held an agency still has the option of pursuing a performance-based case under chapter 75, as was done before the Reform Act of 1978. If it does, however, it is bound by the substantive and procedural requirements of that chapter. On the other hand, if chapter 43 is the option chosen, the procedures and standards thereunder apply. The latter are described by *Lovshin* as more "narrowly reviewable," at 834, and lesser sanctions than demotion or removal are held not to be authorized.[9]

Further, and critical to the present case, it was held in *Lovshin* that once an agency has set up an approved performance appraisal system, has communicated the performance standards and critical elements of an employee's position to the employee at the start of the appraisal period, has warned of inadequacies in "critical elements" during the appraisal period, and has afforded counseling and an opportunity for improvement after proper notice, an agency may reduce in grade or remove an employee for receiving a rating of "unacceptable" in a single critical element. "No more is required of the agency; that is, a removal or demotion on the basis of an 'unacceptable performance' *rating* on a 'critical element' is not subject to any of the substantive or procedural requirements of Chapter 75." *Lovshin*, at 834. (Emphasis in original.)

Board review for penalty mitigation is established under chapter 75 but we now reiterate that this is one of the requirements to which actions under chapter 43 are not subject. This follows logically from the further fact that while section 7512 of chapter 75 applies to removals and to reductions in grade and pay, subsection D states that it is not applicable to removals or reductions under section 4303 of chapter 43. While in the legislative history and language of the Reform Act mitigation

---

**8.** Petitioner says these are among the issues that would be resolved if the MSPB permitted a hearing on mitigation of the sanction. The presiding official resolved these issues in petitioner's favor in the initial decision which the board reversed.

**9.** An agency can bring a "mixed case" relying on chapter 43 for unacceptable performance in a critical element with an alternative or additional charge under chapter 75 for such cause as will promote the efficiency of the service. In such cases the standard of review by MSPB would be applied according to the basis for each specific charge. A performance-based case under chapter 75 would enable the agency to impose a lesser sanction for poor performance than removal or demotion, the only sanctions authorized by chapter 43. *Lovshin*, at 843.

is not specifically addressed, viewed in their entirety, they convey the clear and irrefutable implication, as described in *Lovshin,* that chapter 43 is "independently operative," at 835, that "the agency need not prove ... that removal or demotion is an appropriate penalty," at 834, and thus it follows that agency actions under chapter 43 are not bound by the language, practices, or case law applicable to chapter 75.

The parties in this well-briefed and well-argued case have raised additional points for consideration. We conclude that it is unnecessary to reach them in view of our disposition of the appeal on the grounds discussed above.

## CONCLUSION

■ Neither the language of the Civil Service Reform Act of 1978 nor its legislative history demonstrates that Congress intended the Merit Systems Protection Board to review and, where deemed appropriate, to mitigate penalties in chapter 43 cases. The Reform Act does not make the MSPB's adjudicatory powers co-extensive in chapter 43 and chapter 75 cases. We decline the invitation of petitioner to extend the statute beyond what we perceive to be the congressional intent behind it. The MSPB was therefore correct when it reversed the initial decision of its presiding official and sustained the action of the Federal Home Loan Bank Board in removing petitioner from his position for unacceptable performance in a critical element of his position, pursuant to 5 U.S.C. § 4303. There was no harmful error in this, no prohibited personnel practice, and nothing contrary to law. Pursuant to the statutory scope of review, 5 U.S.C. § 7703(c), we conclude that there is no basis on which to reverse the MSPB decision.

AFFIRMED.

## APPENDIX

### 5 U.S.C. § 4303 (1982)

§ 4303. *Actions based on unacceptable performance*

(a) Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance.

(b)(1) An employee whose reduction in grade or removal is proposed under this section is entitled to—

(A) 30 days' advance written notice of the proposed action which identifies—

(i) specific instances of unacceptable performance by the employee on which the proposed action is based; and

(ii) the critical elements of the employee's position involved in each instance of unacceptable performance;

(B) be represented by an attorney or other representative;

(C) a reasonable time to answer orally and in writing; and

(D) a written decision which—

(i) in the case of a reduction in grade or removal under this section, specifies the instances of unacceptable performance by the employee on which the reduction in grade or removal is based, and

(ii) unless proposed by the head of the agency, has been concurred in by an employee who is in a higher position than the employee, who proposed the action.

(2) An agency may, under regulations prescribed by the head of such agency, extend the notice period under subsection (b)(1)(A) of this section for not more than 30 days. An agency may extend the notice period for more than 30 days only in accordance with regulations issued by the Office of Personnel Management.

(c) The decision to retain, reduce in grade, or remove an employee—

(1) shall be made within 30 days after the date of expiration of the notice period, and

(2) in the case of a reduction in grade or removal, may be based only on those instances of unacceptable performance by the employee—

(A) which occurred during the 1-year period ending on the date of the notice under subsection (b)(1)(A) of this section in connection with the decision; and

(B) for which the notice and other requirements of this section are complied with.

(d) If, because of performance improvement by the employee during the notice period, the employee is not reduced in grade or removed, and the employee's performance continues to be acceptable for 1 year from the date of the advance written notice provided under subsection (b)(1)(A) of this section, any entry or other notation of the unacceptable performance for which the action was proposed under this section shall be removed from any agency record relating to the employee.

(e) Any employee who is a preference eligible or is in the competitive service and who has been reduced in grade or removed under this section is entitled to appeal the action to the Merit Systems Protection Board under section 7701 of this title.

(f) This section does not apply to—

(1) the reduction to the grade previously held of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title.

(2) the reduction in grade or removal of an employee in the competitive service who is serving a probationary or trial period under an initial appointment or who has not completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less, or

(3) the reduction in grade or removal of an employee in the excepted service who has not completed 1 year of current continuous employment in the same or similar positions.