# United States Court of Appeals for the Federal Circuit

---

**JEFFREY F. SAYERS,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2018-2195

---

Petition for review of the Merit Systems Protection Board in No. SF-0714-18-0067-I-1.

---

Decided: March 31, 2020

---

DAVID L. SCHER, Hoyer Law Group, PLLC, Tampa, FL, argued for petitioner. Also represented by NATALIE KHAWAM, Whistleblower Law Firm, PA, Tampa, FL.

BRINTON LUCAS, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ELIZABETH MARIE HOSFORD, JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

RUSHAB SANGHVI, Office of General Counsel, American Federation of Government Employees, Washington, DC,

argued for amicus curiae American Federation of Government Employees, AFL-CIO.

―――――――――――

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

In 2017, Congress enacted the Department of Veterans Affairs Accountability and Whistleblower Protection Act, which gave the Department of Veterans Affairs a new, streamlined authority for disciplining employees for misconduct or poor performance, and placed certain limitations on the review of those actions by the Merit Systems Protection Board. Later in 2017, the Department applied 38 U.S.C. § 714,[1] which codifies the Act, to remove Dr. Jeffrey Sayers from his position as a chief pharmacist. Dr. Sayers appealed to the Board and an administrative judge affirmed his removal.[2] He subsequently appealed to this Court.

―――――――――――

[1]   More specifically, the Act, as codified in § 714, allows the Secretary of Veterans Affairs to remove an employee for inadequate performance or misconduct. § 714(a). Compared to pre-existing removal authority, particularly the authority provided under title 5, chapter 75, § 714 speeds up the removal process, § 714(c), lessens the VA's burden of proof at the Board from the preponderance of the evidence to substantial evidence, § 714(d)(2)(A), (d)(3)(B), and strips the Board of its authority to mitigate the VA's imposed penalty. § 714(d)(2)(B), (d)(3)(C).

[2]   Because Dr. Sayers did not appeal the Administrative Judge's initial decision to the full Merit Systems Protection Board, it became the final decision of the Board. *See* 5 U.S.C. § 7701(e)(1).

Our primary issue on appeal is whether § 714 can apply retroactively to conduct that took place before its enactment. To decide that issue, we must also decide the proper interpretation of the statutory limitation on the Board's review authority in § 714(d)(2)(B) and (d)(3)(C). We ultimately hold that § 714, properly construed, has impermissible retroactive effect, and that Congress did not authorize the statute's retroactive application. Because we conclude that § 714 cannot be applied retroactively—and Dr. Sayers's conduct underlying his removal took place before its enactment—we vacate his removal and remand to the Board for further proceedings.

I

The Department of Veterans Affairs (VA) promoted Dr. Sayers to his position as the Chief of Pharmacy Services for the Greater Los Angeles (GLA) Health Care System in 2003. In that role, Dr. Sayers managed about 175 full-time employees across five pharmacies and three opioid-treatment facilities. In June 2016, a VA site-visit team investigating GLA Health Care System practices discovered violations of VA policy in the pharmacies under Dr. Sayers's supervision. When Dr. Sayers failed to follow orders to immediately correct these violations, the VA detailed him from the Chief of Pharmacy Services position pending further review.

Nine months later, while Dr. Sayers remained detailed from the Chief position, the VA sent another site-visit team to review GLA pharmacy internal control systems. **[J.A. 5.]** The review team visited four of the five GLA pharmacies, discovering violations of VA policy so numerous and concerning that the team did not even review the internal control systems. Because compliance with these policies fell within Dr. Sayers's purview as the Chief of Pharmacy Services, the GLA Chief of Staff proposed Dr. Sayers's removal under § 714 in September 2017. The GLA Health Care Director acted as the deciding official and sustained

the charges; the VA removed Dr. Sayers effective November 7, 2017.

## II

Dr. Sayers appealed to the Merit Systems Protection Board, and the Administrative Judge affirmed his removal under § 714. The Administrative Judge found that substantial evidence supported eight of the nine factual specifications underlying the VA's charge that Dr. Sayers had failed to perform assigned duties. *Sayers v. Dep't of Veterans Affairs,* No. SF-0714-18-0067-I-1, slip op. at 11 (M.S.P.B. Apr. 18, 2018) (*"Board Decision").* She also found that substantial evidence supported the single specification underlying the VA's charge that Dr. Sayers had failed to follow instructions. *Board Decision* at 28. The Administrative Judge rejected Dr. Sayers's arguments that he had suffered harmful procedural error and that the removal had violated his due process rights. Finally, she declined to consider Dr. Sayers's argument that his removal constituted an unreasonable penalty under the circumstances because it was inconsistent with the VA's table of penalties and violated the VA's policy of progressive discipline. The Administrative Judge explained that under 38 U.S.C. § 714(d)(2)(B), the Board "does not have the authority to mitigate the penalty prescribed by the agency." *Id.* at 41. She interpreted this lack of mitigation authority to foreclose the Board from "assess[ing] the factors considered or the weight accorded any particular factor in selecting a penalty." *Id.*

Dr. Sayers timely petitioned for review. We have jurisdiction to review final Board decisions under 28 U.S.C. § 1295(a)(9). S*ee also* 38 U.S.C. § 714(d)(5)(A).

## III

We review a final decision of the Board to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained

without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *Purifoy v. Dep't of Veterans Affairs*, 838 F.3d 1367, 1371 (Fed. Cir. 2016) (quoting 5 U.S.C. § 7703(c)); *see also* 38 U.S.C. § 714(d)(5)(A) (applying 5 U.S.C. § 7703 to Federal Circuit review of Board decisions about § 714 adverse actions). "We review the Board's determinations of law for correctness without deference to the Board's decision." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005).

On appeal, Dr. Sayers primarily argues that the Board erred in upholding his removal under § 714 because his alleged misconduct took place before its enactment.[3] He argues that the statute is silent on retroactivity, and the presumption against retroactivity should thus apply since the statute's standard of proof and limitations on penalty mitigation detrimentally affect his property right to agency employment. We agree with Dr. Sayers, and accordingly vacate the Board's decision.

---

[3] The VA argues that Mr. Sayers waived this argument by not raising it before the Board. Even if Mr. Sayers failed to preserve this argument, we believe that this issue merits exercising our discretion to resolve it on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Because the retroactivity of § 714 raises a pure issue of law that affects many VA employees, the Board lacks a quorum to definitively decide the issue, and different administrative judges have come to different non-binding interpretations of the statute, *see, e.g.*, *McDonald v. Dep't of Veterans Affairs*, No. DE-0714-17-0409-I-1, 2018 WL 494983 (M.S.P.B. Jan. 16, 2018), the interests of justice are best served by reaching this issue. *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995).

A

Before proceeding to the retroactivity analysis, we first must resolve the differences between the parties regarding § 714's meaning and effect.[4]

Congress enacted the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 on June 23, 2017. Pub. L. No. 115-41, 131 Stat. 862. The Act was introduced to give the VA "the tools . . . to swiftly and effectively discipline employees who don't meet the standards our veterans deserve or who fail in their sacred mission to provide world-class health care and benefits to the men and women who have served" and to "provide a singular expedited procedure for all VA employees to respond and appeal to proposed removals, demotions, and suspensions for performance or misconduct." 163 Cong. Rec. H2114 (daily ed. Mar. 16, 2017) (statement of Congressman Roe). Among other provisions, the Act established 38 U.S.C. § 714, s*ee* Pub. L. No. 115-41, § 202, 131 Stat. at 869, which provides the VA with a process for removing, demoting, or suspending its employees for inadequate performance or misconduct. Section 714's process presents the VA with an expedited, less rigorous alternative to traditional civil service adverse action appeals under title 5 chapter 75 (misconduct and performance) and

---

[4]    Dr. Sayers, misreading 38 U.S.C. § 714(a)(1), also contends that the VA impermissibly applied a "substantial evidence" standard to review the sufficiency of the charges underpinning his proposed removal. Pet. Br. 13–17. Although we agree with Dr. Sayers that nothing in the statute compels the VA to apply a substantial evidence standard for removal rather than a preponderance standard, we also agree with the government that nothing prevents the VA from doing so. *See* Resp. Br. 34–35. Because the statute leaves the proper standard to the VA's discretion, the VA did not err by choosing substantial evidence review.

title 5 chapter 43 (performance). *Cf. Lovshin v. Dep't of Navy*, 767 F.2d 826, 842–43 (Fed. Cir. 1985) (holding that the passage of chapter 43 did not foreclose removal for inadequate performance under chapter 75).

Under § 714(a)(1), "[t]he Secretary may remove, demote, or suspend [an employee] if the Secretary determines the performance or misconduct of the [employee] warrants such removal, demotion, or suspension." "The aggregate period for notice, response, and final decision . . . may not exceed 15 business days[,]" and the employee must appeal the adverse action to the Board within ten business days. § 714(c)(1)(A), (4)(B). The appeal is subject to expedited review, and "the administrative judge shall uphold the decision of the Secretary . . . if the decision is supported by substantial evidence." § 714(d)(1)–(2)(A). "[I]f the decision of the Secretary is supported by substantial evidence, the administrative judge shall not mitigate the penalty prescribed by the Secretary." § 714(d)(2)(B).[5] The VA argues that this provision limits the Board's review to only the facts underlying an adverse action. *See* Resp. Br. 29; Oral Arg. at 28:15–30:00, available at http://www.cafc.uscourts.gov/oral-argument-recording. We disagree. Section 714 requires the Board to review the adverse action decision in full.

The ordinary meaning of "the decision" reviewed by the Board refers to the entire decision—including the VA's choice of penalty. The "decision" referred to in § 714 is not merely the choice to sustain the charges against the employee. It is the decision "to remove, demote, or suspend [the] employee under subsection (a)." § 714(d)(2)(A) ("[T]he administrative judge shall uphold the *decision* of the

---

[5]    The same standards apply to the Board's review of the Secretary's decision if the employee appeals the administrative judge's decision to the full Board. *See* § 714(d)(3)(B)–(C).

Secretary *to remove, demote, or suspend an employee* under subsection (a) if the decision is supported by substantial evidence." (emphasis added)).  Subsection (a)—§ 714(a)(1), specifically—distills the Secretary's decision to "determin[ing] [if] the performance or misconduct of the [employee] *warrants such removal, demotion, or suspension.*" § 714(a)(1) (emphasis added).  When correctly interpreted, § 714 requires the Board to review whether the Secretary had substantial evidence for his decision that an employee's actions warranted the adverse action.  The Board cannot meaningfully review that decision if it blinds itself to the VA's choice of action.  Deciding that an employee stole a paper clip is not the same as deciding that the theft of a paper clip warranted the employee's removal.

An adverse action "decision" based on misconduct has meant a decision to impose a certain penalty since long before the enactment of § 714.  *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 297 (M.S.P.B. 1981) ("[A]n agency's adverse action 'decision' necessarily includes selection of the particular penalty as well as the determination that some sanction was warranted.").  We must presume that Congress was aware of this history when drafting the statute.  *Cf. Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779–83, 791, 799 (1985) (interpreting 5 U.S.C. § 8347(c), which declares that "the decisions of the Office [of Personnel Management] concerning [retiree disability and dependency] are final and conclusive and are not subject to review," and reversing this Court's en banc ruling that § 8347 "plainly" precluded *any* judicial review; reasoning that Congress's failure to explicitly repeal Court of Claims precedent predating § 8347(c) only barring review of the factual underpinnings of such decisions gives rise to a presumption that Congress intended § 8347 to embody that precedent).  Further, Congress could have chosen other phrasing had it wanted to narrow the aspects of the adverse action decision to be reviewed:  Congress has expressly contoured the nature of review in other statutes.

*See, e.g.*, 38 U.S.C. § 7292(d)(2) ("Except to the extent that an appeal [from the Court of Appeals for Veterans Claims] under this chapter presents a constitutional issue, the Court of Appeals [for the Federal Circuit] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."); *Bernklau v. Principi*, 291 F.3d 795, 800 (Fed. Cir. 2002) ("Unless there is a constitutional issue presented [by the decision of the Court of Appeals for Veterans Claims], however, we may not review factual determinations [made by that court]." (citing § 7292(d)(2))).

In the absence of a clearer statement than § 714(d)(2)(B), which prohibits the administrative judge from *mitigating* a penalty supported by substantial evidence, we should not presume the prohibition of *all review* of the penalty to ensure its legality. In fact, § 714's integration with title 5 shows that the Board must still ensure that the VA's decision accords with the law. Section 714(d)(2)(A) explicitly declares that the § 714 "substantial evidence" requirement for Board review overrides the "preponderance of the evidence" standard used to review adverse actions under title 5 chapter 75. *See* § 714(d)(2)(A) (requiring that, "[n]otwithstanding section 7701(c)(1)(B) of title 5," the administrative judge must uphold the Secretary's decision if it is supported by substantial evidence); 5 U.S.C § 7701(c)(1)(B) ("Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision . . . is supported by a preponderance of the evidence."). But § 714 notably does not override § 7701(c)(2)(C), which requires the decision to accord with the law, even if it is supported by the evidence. *See* 5 U.S.C § 7701(c)(2) ("Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment . . . shows that the decision was not in accordance with law."). This requirement, ensuring that an adverse action accords with law, has traditionally

meant reviewing the adverse action decision in its entirety, not just the factual basis for the alleged conduct. *Cf. Douglas*, 5 M.S.P.R. at 297 ("[A]n adverse action may be adequately supported by evidence of record but still be arbitrary and capricious, for instance if there is no rational connection between the grounds charged and the interest assertedly served by the sanction.").

And although § 714 overrides "title 5 or any other provision of law" when barring *mitigation* of the penalty, § 714(d)(2)(B), (3)(C), reviewing the totality of the adverse action decision stands apart from mitigating an unreasonable penalty. *Cf. Douglas*, 5 M.S.P.R. at 306 ("Only if the Board finds . . . that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness."). The plain meaning of § 714, when considered in its entirety, conveys that when determining whether "the decision" is supported by substantial evidence, the Board (or administrative judge) must necessarily consider the agency's penalty choice as part of that review.

The legislative history of the VA Accountability and Whistleblower Protection Act supplies meager discussion of penalty mitigation, never directly addressing whether the Board can review the agency's penalty decision. The Senate debates show that the overall intent of the Act was to make it easier and faster for the VA to penalize employees for misconduct. *See* 163 Cong. Rec. S3280 (daily ed. June 6, 2017) (remarks of Sen. Rubio) ("[W]hile the employee is getting due notice and the opportunity to defend themselves, it doesn't drag on forever."). Yet those debates reinforce Congress's intent to maintain due process protections for employees, including the opportunity to appeal the Secretary's removal decision. *See id.* ("This bill will also ensure that VA employees' due process rights are respected and not infringed upon."); *see also id.* at S3276

(remarks of Sen. Nelson) ("I also believe that it is important to protect the rights of the employees who may have been wrongly terminated, especially at the lower levels, by giving them the opportunity to appeal a supervisor's decision to fire them.  This bill we are going [to] pass does that."); *id.* at S3268 (remarks of Sen. Tester) ("It does not gut due process protections.  It keeps all the existing due process protections under current law.  Unlike the House bill, it doesn't shorten or eliminate the appeals process for employees who are fired.").  The government's reading—allowing the agency to remove an employee for the tiniest incident of misconduct so long as the agency could present substantial evidence that the trifling misconduct occurred—could "gut due process protections" in a way Congress did not intend.

Further persuasive evidence of congressional intent arises from the interaction between Congress and the Board leading up to the enactment of § 714.  Before § 714's passage in 2017, Congress passed a similar provision related to the removal of Senior Executive Service officials, 38 U.S.C. § 713.  *See* Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, 128 Stat. 1754.  The Board considered the 2014 Act to require it "to develop and to put into effect expedited procedures for processing appeals filed pursuant to 38 U.S.C. [§] 713," so the Board promulgated a regulation that eased the requirements imposed by *Douglas*.  Practices and Procedures; Appeal of Removal or Transfer of Senior Executive Service Employees of the Department of Veterans Affairs, 79 Fed. Reg. 48,941, 48,941 (Aug. 19, 2014).  Even so, the regulation still allowed for review of the entire adverse action decision, including the penalty—just without penalty mitigation.  *See* 5 C.F.R. § 1210.18(d) (2014) (allowing an employee to "establish[] that the imposed penalty was unreasonable under the circumstances of the case, in which case the action is reversed" but clarifying that "the administrative judge may not mitigate the Secretary's decision").

Besides the text itself and the legislative history, our reading also accords with basic precepts of administrative law and judicial review.  Even if we adopted the government's construction of § 714, in which the Board has to treat the penalty imposed as an irrelevant distraction from its factual audit of the Board's evidence, this Court would still review the Board's decision under the familiar standard that it must "hold unlawful and set aside any agency action, findings, or conclusions found to be--(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ."  5 U.S.C. § 7703(c).  It would then fall to this Court to examine whether the VA had imposed a penalty unsupported by substantial evidence or not in accordance with the law. *Douglas*, in formalizing the Board's review of adverse action penalty decisions, recognized the importance of this Court not performing such review for the first time. *Douglas*, 5 M.S.P.R. at 301–02 ("To assure that its decisions meet that standard under Section 7703(c), the Board must, in addition to determining that procedural requirements have been observed, review the agency's penalty selection . . . .  Therefore, in reviewing an agency-imposed penalty, the Board must[,] at a minimum[,] assure that the *Overton Park* criteria for measuring arbitrariness or capriciousness have been satisfied.").

Our interpretation also fits with the historical practice of reviewing the penalty in adverse action decisions. *Cf. Douglas*, 5 M.S.P.R. at 290 ("It cannot be doubted, and no one disputes, that the Civil Service Commission was vested with and exercised authority to mitigate penalties imposed by employing agencies." (footnote omitted)).  The longstanding acceptance of penalty review, with or without mitigation authority, comes with good reason:  it avoids absurd, unconstitutional results.  Under the government's reading, an agency could remove an employee for an

extremely trivial offense—theft of a paperclip being the ex-ample given at oral argument—so long as substantial evi-dence supports that the employee actually stole a paperclip. This implausible scenario becomes far more likely if the government alleges several specifications sup-porting a charge that merits removal, but only meets its burden of showing substantial evidence for the most minor specifications. *Cf. Douglas*, 5 M.S.P.R. at 308 ("Whenever the agency's action is based on multiple charges[,] some of which are not sustained, the presiding official should con-sider carefully whether the sustained charges merited the penalty imposed by the agency."). Our interpretation of § 714 gives meaningful effect to the statutory language but avoids this absurd result where an employee with an oth-erwise sterling record could be removed over a trivial inci-dent.

For its contrary interpretation, the government relies largely on this Court's decision in *Lisiecki v. Merit Sys. Prot. Bd.*, 769 F.2d 1558 (Fed. Cir. 1985). *Lisiecki* dealt with the portion of the Civil Service Reform Act of 1978 (CSRA) codified at 5 U.S.C. § 4303, known as chapter 43, which created new procedures to discipline employees for unacceptable performance. The chapter 43 adverse actions established by the CSRA differ from chapter 75 adverse actions in several ways. *See generally* U.S. Merit Sys. Prot. Bd., *Performance-Based Actions under Chapters 43 and 75 of Title 5 – Similarities and Differences*, in *Adverse Actions: A Compilation of Articles* 9–13 (Dec. 2016), https://www.mspb.gov/mspbsearch/viewdocs.aspx?docnum ber=1361510&version=1366861 (reporting to Congress and the President on the procedural differences between chapter 43 and chapter 75 adverse actions). Under chapter 43, the agency need not show that an adverse action stems from conduct that harms the efficiency of the service. *Lisiecki*, 769 F.2d at 1565. And under chapter 43, the MSPB may only review the agency's decision for substantial evidence, in contrast to chapter 75's

requirement that the MSPB review the agency's decision for preponderant evidence. *See id.*; *see also* 5 U.S.C. § 7701(c)(1)(A)–(B). We held that those two differences between chapter 75 and chapter 43 adverse action procedures provided "a clear indication of congressional intent to restrict the [B]oard's authority in reviewing chapter 43 actions" and thus concluded that the Board lacks authority "to review and, where deemed appropriate, to mitigate penalties in chapter 43 cases." *Lisiecki*, 769 F.2d at 1565, 1568. The government argues that if the Board has no authority to review a penalty under chapter 43, which is silent on the Board's mitigation powers, then the Board must also lack authority to review a penalty under § 714, which expressly removes its mitigation authority.

Different concerns governed *Lisiecki*, however, and the reasoning behind *Lisiecki* cannot apply given the different procedural protections in § 714 removals. Chapter 43 procedures expressly do not apply to § 714 removals. *See* § 714(c)(3). More importantly, the reasoning undergirding *Lisiecki* arises from the specific circumstances of chapter 43 adverse actions, which have a narrow focus not applicable to § 714. Chapter 43 deals exclusively with removals for inadequate performance. 5 U.S.C. § 4303(a) ("Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance."). Section 714 allows removal for performance *or misconduct*, traditionally governed by chapter 75. Performance adverse actions and misconduct adverse actions have rather distinct considerations. *Lisiecki*, 769 F.2d at 1566 ("The conclusion in *Douglas* that the MSPB could mitigate penalties assessed under chapter 75 was based on considerations not anywhere present under chapter 43."). Overriding the agency's choice of penalty has a very different effect on the agency when the penalty is imposed for incompetence rather than misconduct. *Id.* ("To permit the MSPB to mitigate demotion or removal

would . . . . permit the [B]oard to require an agency to re-tain an incompetent worker in situations where it proposed removal."). In addition, the agency has a unique view on how its employees' incompetence impacts the agency, com-pared to the more generalized impact that misconduct has on an agency. *See id.* ("Management best knows its needs and the potential of its employees to further an agency's statutory mission."). These considerations provide a key distinction from misconduct removals: if the facts support-ing an employee's incompetence exist, the choice of penalty is based not on the employee's conduct, but on the agency's work requirements; Board review or mitigation of that choice does not make sense. *Cf. id.* at 1566–67 (providing Mr. Lisiecki's removal as a concrete example of how miti-gation disrupts agency function in chapter 43 removals).

Beyond these pragmatic considerations lurk constitu-tional concerns. Employees enjoy much greater pre-termi-nation due process protections under chapter 43 than under § 714. *Lisiecki* itself highlights the factors that dis-tinguish chapter 43 actions from chapter 75 actions, which also provide more pre-termination due process than § 714 actions. *Id.* at 1566 ("It is important not to ignore the vital distinctions between the relevant chapters of title 5."); *see supra* note 1. Chapter 43 actions may be taken only after the employee is given notice and an opportunity to im-prove. *Lisiecki*, 769 F.2d at 1561, 1566. The agency may only choose from two penalties: demotion or removal. *Id.* at 1564, 1566. And chapter 43 actions are remedial rather than punitive. *Id.* at 1566. These distinctions between chapter 43 performance removals and chapter 75 miscon-duct removals were critical to *Lisiecki*'s holding. Sec-tion 714's inclusion of misconduct removals prevents *Lisiecki*'s rationale from being meaningfully extended to § 714.

For these reasons, we hold that § 714 requires the Board to review for substantial evidence the entirety of the VA's removal decision—including the penalty—rather

than merely confirming that the record contains substantial evidence that the alleged conduct leading to the adverse action actually occurred.[6]

B

Having addressed the disputed interpretation of § 714, we conclude that it cannot be applied to remove Dr. Sayers for the alleged misconduct without giving the statute impermissible retroactive effect. Generally, statutes apply only prospectively unless Congress expresses a "clear intent" that a provision should apply retroactively. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272–73 (1994). This default rule has certain exceptions, for example, if a statute amends only procedural rules. *Id.* at 275. "The first step in the impermissible-retroactive-effect determination is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." *I.N.S. v. St. Cyr*, 533 U.S. 289, 291 (2001). Section 714 itself is silent on retroactivity. The VA Accountability and Whistleblower Protection Act does not reveal any intent that § 714 apply retroactively. In fact, the Act's only references to when any of its provisions become effective relate to clawing back disciplined employees' bonuses or relocation expenses; these provisions become effective only prospectively. *See* Pub. L. No. 115-41, §§ 204–205, 131 Stat. 862, 875–77. The statute plainly lacks an "'unambiguous directive' or 'express command' that the statute is to be applied retroactively."

---

[6] Since we hold that § 714 does not apply to Dr. Sayers because of its impermissible retroactive effect, we do not opine on the appropriate remedy in a hypothetical future case in which the Board finds a penalty unsupported by substantial evidence. It should be obvious, however, that the Board cannot revise the agency's choice of penalty to its own preferred alternative. *E.g.*, § 714(d)(3)(C).

*Martin v. Hadix*, 527 U.S. 343, 354 (1999) (quoting *Land-graf*, 511 U.S. at 263, 280).

"If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect." *Id.* at 352. "If so, then . . . we presume that the statute does not apply to that conduct." *Id.* The Supreme Court describes "retroactive effect" as "whether [a statute] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. In other words, we make a "commonsense, functional judgment about 'whether the new [statute] attaches new legal consequences to events completed before its enactment,'" making this judgment "informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin*, 527 U.S. at 357–58 (quoting *Landgraf*, 511 U.S. at 270). If the statute attaches new legal consequences to events before its enactment (and is otherwise silent about its retroactivity), the statute must not apply to those prior events.

*Landgraf* recognized that "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights." 511 U.S. at 271. Dr. Sayers had a property right in his continued employment, *see Stone v. F.D.I.C.*, 179 F.3d 1368, 1374–75 (Fed. Cir. 1999), so § 714 falls within that category. By requiring the Board to apply the substantial evidence standard in reviewing the removal decision, instead of the preponderance standard normally required for misconduct removals under 5 U.S.C. § 7701(c), and by preventing any mitigation of a penalty that substantial evidence supports, § 714 affects employees' substantive rights to relief from improper removal. *Compare* 5 U.S.C. § 7701(c)(1)(B) (setting forth the evidentiary standard for Board appeals of adverse actions

not under chapter 43 to require "support[] by a preponderance of the evidence")*, with* § 714(d)(2)(A)–(B) (applying the substantial evidence standard for Board appeals of § 714 adverse actions).

When a statute "change[s] standards of proof and persuasion in a way favorable to a State, the statute goes beyond 'mere' procedure to affect substantive entitlement to relief." *Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *see also United States v. $814,254.76 in U.S. Currency, Contents of Valley Nat. Bank Account No. 1500-8339*, 51 F.3d 207, 212 (9th Cir. 1995) (holding a statute that "effectively permits the Government to achieve the identical results available under the criminal forfeiture statute, but with a lower standard of proof" to have impermissible retroactive effect if applied retrospectively). And the Supreme Court has held the loss of "reasonable reliance on the continued availability of discretionary relief" akin to penalty mitigation to have an impermissible retroactive effect. *St. Cyr*, 533 U.S. at 324–25 ("There is a clear difference, for the purposes of retroactivity analysis, between facing possible [removal] and facing certain [removal]."). The imposition of a penalty supported only by substantial evidence, instead of preponderant evidence, with no possibility of mitigation for an error in judgment by the VA, rises to the level of substantive impact. Under § 714, Dr. Sayers can be held responsible for alleged misconduct even if his culpability for that misconduct goes against the weight of the evidence. He can be divested of his property right in continued employment even if that consequence goes against the weight of the evidence. He then loses any possibility of the Board giving him discretionary relief from the penalty imposed for that adverse action, even if he presents compelling reasons for such mitigation. Those changes in proof, persuasion, and the availability of discretionary penalty mitigation from the prior chapter 75 standard to the current § 714 procedure unquestionably diminish Dr. Sayers's property right in continued employment.

This retroactive effect occurs despite the VA's protestation that it did not propose Dr. Sayers's removal until after the passage of § 714. *See* Resp. Br. 18. Section 714's impermissible retroactive effect on Dr. Sayers's substantive employment right is not eliminated by the prospective application of § 714's *procedures*. Dr. Sayers had a right to the substantive civil service protections from improper or unjustified removal in effect at the time of his alleged misconduct. These protections were a condition of his employment, and they remained terms of his employment until Congress altered those conditions with the passage of § 714—at which point, Dr. Sayers had the chance to reconsider whether he would accept those terms to govern his employment going forward.

Nor can we agree with the VA's assertion that finding § 714 impermissibly retroactive gives Dr. Sayers "a vested right to engage in poor performance and misconduct yet retain his job." Resp. Br. 22. Such an argument overlooks that the VA always had the ability to remove Dr. Sayers for misconduct or poor performance. Likewise, the VA's arguments ignore that allegations of defective performance or misconduct may sometimes be incorrect or pretextual, and that the system of civil service protections exists in part to prevent the loss of employment due to such faulty allegations. Dr. Sayers is entitled to the legal protections in place during the period in which the alleged misconduct occurred because Congress did not provide a clear statement that it intended to modify retroactively VA employees' rights to those protections.

## IV

Because the Department of Veterans Affairs cannot remove Dr. Sayers under § 714 without the statute having impermissible retroactive effect, we vacate Dr. Sayers's removal and remand to the Merit Systems Protection Board for further proceedings consistent with this opinion.

**VACATED and REMANDED**

No costs.