# United States Court of Appeals for the Federal Circuit

---

**LAWRENCE BRENNER,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-2032

---

Petition for review of the Merit Systems Protection Board in No. NY-0714-19-0007-I-1.

---

Decided: March 9, 2021

---

ALAN EDWARD WOLIN, Wolin & Wolin, Jericho, NY, argued for petitioner.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JEFFREY B. CLARK, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.; AARON ROBISON, Office of General Counsel, United States Department of Veterans Affairs, Sacramento, CA.

---

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Petitioner, Lawrence Brenner, seeks review of a final decision of the Merit Systems Protection Board ("MSPB") affirming the U.S. Department of Veterans Affairs' ("VA") decision to remove Mr. Brenner from his position as General Attorney, GS-14, with the VA's Collections National Practice Group ("CNPG") pursuant to 38 U.S.C. § 714, enacted as part of the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 ("the Act"), Pub. L. No. 115–41, 131 Stat. 862. *See Brenner v. Dep't of Veterans Affairs*, No. NY-0714-19-0007-I-1, 2019 WL 1315751 (M.S.P.B. Mar. 18, 2019) (J.A. 7–54).[1]

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). We vacate and remand.

BACKGROUND

I. Statutory Framework

Generally, federal agencies "have two procedural routes available to them" to remove an employee: 5 U.S.C. Chapter 75 (for misconduct and poor performance) and 5 U.S.C. Chapter 43 (for poor performance). *Harris v. Sec. & Exch. Comm'n*, 972 F.3d 1307, 1315 (Fed. Cir. 2020); *see Sayers v. Dep't of Veterans Affairs*, 954 F.3d 1370, 1378–79 (Fed. Cir. 2020). Further, as of 2017, the VA has a third

---

[1]    An administrative judge issued an initial decision on March 18, 2019, which became final when Mr. Brenner did not file a petition for review. J.A. 7; *see also* 5 C.F.R. § 1201.113(a) (providing that "[t]he initial decision of the judge will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "any party files a petition for review"). Therefore, we refer to the Initial Decision as the MSPB's Final Decision.

procedural route available to it:  the Act, as codified at 38 U.S.C. § 714.  Each route entails different procedures and, therefore, different protections for federal employees. *See Sayers*, 954 F.3d at 1377–79.

First, "Chapter 75 . . . is concerned with removals and other disciplinary action."  *See Lovshin v. Dep't of Navy*, 767 F.2d 826, 830 (Fed. Cir. 1985) (en banc); *see* 5 U.S.C. § 7512 (listing "[a]ctions covered" by Chapter 75).  It has "been in the civil service law essentially unchanged since 1912[.]"  *Lovshin*, 767 F.2d at 830.  It provides for removal "only for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  "This 'nexus' limitation requires the agency to show by a preponderance of the evidence that the employee's misconduct is likely to have an adverse effect upon the agency's functioning."  *Mings v. Dep't of Justice*, 813 F.2d 384, 389–90 (Fed. Cir. 1987) (citation omitted).  "An employee against whom an action is proposed is entitled to" advanced notice of the action, an opportunity to respond, representation by an attorney or other representative, and a timely "written decision" with "the specific reasons" for the agency action.  5 U.S.C. § 7513(b).  The MSPB may mitigate the penalty imposed by the agency through a multifactor balancing test, the *Douglas* factors, to determine whether the agency struck "a responsible balance within tolerable limits of reasonableness."  *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 306 (1981); *see id.* at 305–06 (enumerating the *Douglas* factors, including:  "the nature and seriousness of the offense," the employee's "past disciplinary" and "past work" records, any "mitigating circumstances," and "potential for the employee's rehabilitation"); *see also DeWitt v. Dep't of Navy*, 747 F.2d 1442, 1445 (Fed. Cir. 1984) (affirming the MSPB's penalty determination as "based on a responsible balancing of the factors outlined in *Douglas*").  We "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors."  *Mings*, 813 F.2d

at 390.  We review actions under Chapter 75 for support by a "preponderance of the evidence," as well as for "harmful error in the application of the agency's procedures," for "prohibited personnel practice[s]," and "accordance with law."  5 U.S.C. § 7701(c)(1)(B), (c)(2).

Second, "Chapter 43 . . . is directed to the evaluation of a federal employee's work performance." *Lovshin*, 767 F.2d at 830 (emphasis omitted).  Under Chapter 43, "an agency may reduce in grade or remove an employee for unacceptable performance."  5 U.S.C. § 4303(a).  "[U]nacceptable performance" occurs when "an employee" has "fail[ed] to meet established performance standards in one or more critical elements of such employee's position."  *Id.* § 4301(3).  In order to demote or remove an employee pursuant to Chapter 43, the agency must:  (1) "set up [a] performance appraisal system" that is approved by the Office of Personnel Management ("OPM"); (2) "communicate the written performance standards and 'critical elements' of an employee's position to the employee at the beginning of the appraisal period"; (3) "warn of inadequacies in 'critical elements' during the appraisal period"; and (4) "counsel and afford an opportunity for improvement after proper notice." *Martin v. Fed. Aviation Admin.*, 795 F.2d 995, 997 (Fed. Cir. 1986) (citing *Lovshin*, 767 F.2d at 834).  Because of these procedural requirements and safeguards, Chapter 43 gives the agency "great[er] flexibility" in its adverse action than Chapter 75.  *Lovshin*, 767 F.2d at 842; *see Lisiecki v. Merit Sys. Prot. Bd.*, 769 F.2d 1558, 1565 (Fed. Cir. 1985) (declining to extend "additional procedural standards not identified . . . by judicial interpretation or by regulation or imposed by prior law" to Chapter 43 proceedings because "Chapter 43 has procedural and substantive safeguards to protect employees from unfair or illegal treatment").  In particular, "the agency need not show that [its] adverse action stems from conduct that harms the efficiency of the service." *Sayers*, 954 F.3d at 1378; *see Lisiecki*, 769 F.2d at 1562 (noting that Congress omitted this requirement from

Chapter 43 because "[a]s a practical matter, agencies have found it very difficult to prove [this requirement] to the degree required by courts" (quoting S. REP. No. 95-969, at 43 (1978))); *see also* S. REP. No. 95-969, at 43 (stating that Congress "intends that [Chapter 43] should not be governed by the existing case law" on the "efficiency of the service" requirement). Further, the MSPB may not mitigate an agency's Chapter 43 action using the *Douglas* factors. *See Lisiecki*, 769 F.2d at 1565 (explaining that "Congress did not include [MSPB] authority to mitigate a penalty chosen by the agency" under Chapter 43). We review an agency action under Chapter 43 for support by substantial evidence, as well as for "harmful error in the application of the agency's procedures," for certain "prohibited personnel practice[s]," and "accordance with law." 5 U.S.C. § 7701(c)(1)(A), (c)(2).

In addition to Chapters 43 and 75, the VA has a third procedural mechanism: In 2017, Congress enacted the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115–41, 131 Stat. 862. The Act became effective on June 23, 2017. 131 Stat. at 862. The Act's purpose is to "provide a singular expedited procedure for all VA employees to respond and appeal to proposed removals, demotions, and suspensions for performance or misconduct." *Sayers*, 954 F.3d at 1374 (quotation marks and citation omitted). It is codified, in part, at 38 U.S.C. § 714 and provides less rigorous standards and expedited procedures under which the Secretary of the VA ("the Secretary") "may remove, demote, or suspend" VA employees "if the Secretary determines the performance or misconduct of the covered individual warrants such removal, demotion, or suspension." 38 U.S.C. § 714(a)(1); *see Sayers*, 954 F.3d at 1374 (explaining that 38 U.S.C. § 714 "presents the VA with an expedited, less rigorous alternative to traditional civil service adverse action appeals"); *see also* 38 U.S.C. § 714(c)(3) (providing that "[t]he procedures [of 5 U.S.C. Chapter 43] shall not apply

to a removal [under 38 U.S.C. § 714]"). The administrative judge and MSPB "shall uphold the decision of the Secretary . . . if the decision is supported by substantial evidence," 38 U.S.C § 714(d)(2)(A), (3)(B), and otherwise "in accordance with law," 5 U.S.C. § 7701(c)(2)(C); *see Sayers*, 954 F.3d at 1376 (explaining that "§ 714 notably does not override § 7701(c)(2)(C), which requires the decision to accord with the law, even if it is supported by the evidence"). "[I]f the decision of the Secretary is supported by substantial evidence, the administrative judge [and the MSPB] shall not mitigate the penalty prescribed by the Secretary." 38 U.S.C § 714(d)(2)(B), (3)(C). On appeal from the MSPB, we will "set aside any agency action, findings, or conclusions" that is, inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3); *see* 38 U.S.C. § 714(d)(5)(A) (providing for appeal of the "decision of the [MSPB] under [§ 714(d)(3)] to the . . . Federal Circuit pursuant to [5 U.S.C. §] 7703").

## II. Procedural History[2]

In March 1992, Mr. Brenner joined the VA as an attorney in the Office of the General Counsel ("OGC") in Brooklyn, New York. J.A. 8. In April 2015, he suffered an accident that resulted in the amputation of his lower right leg. J.A. 8. The injury had significant impact on Mr. Brenner's health and daily life and, as a result, he missed approximately six months of work. J.A. 1352–53. Upon returning to work in October 2015, Mr. Brenner was reassigned to the CNPG. J.A. 9; *see* J.A. 9 n.4 (noting that Mr. Brenner's re-assignment was part of a broader reorganization "to improve the [VA's] efficiency"). The CNPG

---

[2]    For ease of reference, unless otherwise noted, we cite to the uncontested facts as recited in the MSPB's Final Decision. J.A. 7–54. *See generally* Petitioner's Br; Respondent's Br.

is a small practice group of GS-13 and GS-14 attorneys that provide legal counsel and representation in "recoupment of funds matters, including in bankruptcy and probate, general debt recoupment related to government property damage, escheatment, accidental injury to veterans, and workers' compensation recovery." J.A. 9. Mr. Brenner remained with the CNPG until his removal in September 2018. J.A. 9 n.5.[3]

Mr. Brenner's performance as a CNPG Attorney Advisor was measured on six metrics—three critical (Stakeholder Service, Timeliness, and Professional Responsibility and Accountability) and three non-critical (Case Development and Management, Quality of Communications and Writing, and Cooperation and Organizational Support). J.A. 9–10. Performance in each metric could be rated "less than fully successful," "fully successful," or "exceptional." J.A. 10. Mr. Brenner received a "fully successful" rating for fiscal year 2016. J.A. 10. Further, Mr. Brenner's first-line supervisor, Anne-Marie Duncan, Deputy Chief Counsel, CNPG, gave him an "exceptional" rating for both client service and legal advice and assistance and a "fully successful"

---

[3] In November 2015, Mr. Brenner "contacted an [Equal Employment Opportunity] Counselor claiming that he was reassigned to CNPG because of his age and disability." J.A. 85. In March 2016, the VA hired an attorney to fill Mr. Brenner's former position. J.A. 85. Thereafter, Mr. Brenner filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that the VA had "denied him the opportunity to [apply and] compete for [his former] position" with his old office "because of his age, disability[,] and reprisal." J.A. 86. The case is currently pending on appeal before the EEOC's Office of Federal Operations. *See* Oral Arg. at 00:55–01:35, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2019-2032.mp3.

rating for all other metrics. J.A. 1372 (Hearing Transcript); *see* J.A. 1373 (Mr. Brenner testifying that Ms. Duncan had also complimented his General Counsel Legal Automated Workload System ("GCLAWS") entries and timeliness).[4]    In May 2017, Ms. Duncan again gave Mr. Brenner a "fully successful" rating for his mid-term progress review. J.A. 10.

However, on July 5, 2017, Ms. Duncan issued a written reprimand to Mr. Brenner for failure to complete a drafting assignment in a timely manner. J.A. 10; *see* J.A. 369–70 (Reprimand). Mr. Brenner had "identified" an "ongoing issue" with one of the judges "overseeing workers' compensation cases," who denied Mr. Brenner "or any other VA attorney [leave] to appear for the sole purpose of presenting [the] VA's claim unless the VA attorney was licensed in the State of New Jersey." J.A. 10 (quoting J.A. 369). On April 27, 2017, Ms. Duncan asked Mr. Brenner to "research workers' compensation law and cases for the State of New Jersey," to determine whether other federal agencies were having the same problem, and "to draft a proposed letter to the chief judge" overseeing the VA's worker compensation cases in New Jersey. J.A. 10–11 (quoting J.A. 369). Ms. Duncan followed up on May 16, 2017; Mr. Brenner requested an extension of time until May 18, 2017, to finish the draft. J.A. 11. Ms. Duncan gave him until May 22, 2017. J.A. 11; *see* J.A. 369. Mr. Brenner did not meet that deadline, J.A. 11; *see* J.A. 369, but following a reminder from Ms. Duncan, submitted a draft on July 24, 2017, J.A. 21. Thereafter, the draft required additional research and re-working, with supervisory support. J.A. 21–22; *see* J.A. 22 (quoting Ms. Kathleen Oddo, Chief Counsel, CNPG,

---

    [4]    GCLAWS is "the OGC's main case-tracking system," recording which attorney is assigned a given case, as well as "what actions [have been] taken" and when. J.A. 15.

testifying that "[w]hen [Mr. Brenner] sent [the] original draft, it was not a draft that was appropriate to send, and [Mr. Brenner] did a lot of work").

On July 14, 2017, Mr. Brenner submitted a grievance challenging the Reprimand. J.A. 88. The grievance was denied. J.A. 89; *see* J.A. 396 (Final Decision). Then, in October 2017, via email, "Ms. Oddo advised Mr. Brenner that he required advanced authorization from Ms. Duncan[] before he could work more than one hour before or after" business hours. J.A. 87; *see* J.A. 87 (noting that Mr. Brenner was required to "make a written request justifying the emergency" even though Mr. Brenner "does not receive any compensation for working" overtime). On December 7, 2017, Mr. Brenner received an overall "unacceptable" rating for fiscal year 2017. J.A. 11; *see* J.A. 1000–09 (Mr. Brenner's fiscal year 2017 Performance Plan and Appraisal). Shortly thereafter, Mr. Brenner challenged the rating by filing an informal grievance. J.A. 431–34 (December 2017 Informal Grievance). The VA informally denied the grievance and, thereafter, Richard Hipolit, Deputy General Counsel for Legal Policy, OGC, and Mr. Brenner's third-line supervisor, formally denied the grievance. J.A. 436–42 (February 2018 Informal Denial), 1036–38 (March 2018 Formal Denial).

On March 26, 2018, Ms. Oddo proposed Mr. Brenner's removal under 38 U.S.C. § 714 for failing to meet performance standards. J.A. 70; *see* J.A. 70–81 (Proposed Removal). Ms. Oddo stated that Mr. Brenner had, for the "performance appraisal rating period of October 1, 2016, through September 30, 2017, . . . failed to meet the performance standards" for Timeliness ("Charge I") and Professional Responsibility and Accountability ("Charge II"), and "for the performance appraisal rating period that began on October 1, 2017, . . . [had] failed to meet the performance standards" for Timeliness ("Charge III"). J.A. 70.

In support of Charge I, Ms. Oddo asserted that Mr. Brenner had "difficulty completing assignments without intervention and follow-up." J.A. 74. She listed thirty-one instances, between October 1, 2016, and September 30, 2017, in which Mr. Brenner was expected, in keeping with a legal services agreement, "to provide a substantive response within seven calendar days" to bankruptcy questions from the VA's Debt Management Center ("DMC"), but did not. J.A. 70–73. She also noted the April 2017 letter drafting assignment for which Mr. Brenner had been reprimanded, J.A. 73, and two other instances, in June and July 2017, in which Mr. Brenner was asked by other VA attorneys to provide legal review and advice on the cashing of a restitution check and bankruptcy court order, respectively, but did not respond until the requesting attorneys followed up with him weeks later, J.A. 22–23, 74; *see* J.A. 721–22, 745–48 (Email Correspondence) (indicating that the client initially requested, on May 31, 2017, legal counsel from Ms. Oddo on how to proceed with a restitution check that had been "been bouncing around the VA for the last month," which she then forwarded to Mr. Brenner "for action" on June 28, 2017, and, to which Mr. Brenner responded, after the client had followed up, on July 20, 2017); *see also* J.A. 749–51 (Email Correspondence) (client request made to Mr. Brenner on July 27, 2017, to which he responded by email and phone call on September 6, 2017, after the client followed up).

In support of Charge II, Ms. Oddo alleged that, in early September 2017, "after being counseled on [his] failure to deliver timely legal services," J.A. 75, Mr. Brenner back-dated his notes for seven cases in GCLAWS to reflect same-day legal service, when same-day service had not been provided, J.A. 27–29. *But see* J.A. 1450–52 (Mr. Brenner testifying that he had not made the entries with "the intent [t]o conceal," and that, from having made hundreds of other entries into GCLAWS, he knew that the actual "date of entry" would "automatically appear" alongside the date he

input).  Ms. Oddo also noted that, in May 2017, Mr. Brenner had confused the date of a hearing and arranged for an attorney admitted to practice in the relevant court to accompany him and represent the VA in that hearing on May 2, 2017, rather than the correct date, May 10, 2017. J.A. 29.  Ms. Duncan was notified of the error on May 4, 2017, not from Mr. Brenner, but from the other attorney's supervisor.  J.A. 30.  While Mr. Brenner apologized for the error when asked, because he had "failed to notify [his] supervisor" himself, Ms. Oddo alleged that he had failed to "accept responsibility for [the] mistake."  J.A. 76; *see* J.A. 30–31.  *But see* J.A. 1287–88 (noting that Mr. Brenner had called a CNPG paralegal on May 2, 2017, from court, asking her to relay a message to Ms. Duncan that he had made a scheduling error).

In support of Charge III, Ms. Oddo stated that, for the rating period beginning October 1, 2017, Mr. Brenner did not timely respond to DMC requests for legal counsel in thirty-six instances.  J.A. 76–79.  In two of the instances, Mr. Brenner did not respond until the DMC and Ms. Duncan followed up with Mr. Brenner, and in twenty-two instances, Mr. Brenner did not respond prior to his removal. J.A. 78–79.

In April 2018, Mr. Brenner submitted a written response, through counsel, to the Proposed Removal.  J.A. 84; *see* J.A. 84–106 (Response to Proposed Removal). Mr. Brenner asserted that his "removal [could] not be sustained on the merits," was "excessive," and did "not promote the efficiency of the service."  J.A. 84.  He argued that "[a]ny discussion" of the three charges "must begin with a review of Mr. Brenner's assignment to the CNPG and the discrimination, retaliation, hostile work environment[,] and abuse of authority he has endured since."  J.A. 85. Mr. Brenner also asserted that he had previously engaged in protected EEO and whistleblowing activity and attached copies of his complaints filed with the Office of Special Counsel ("OSC") and Office of Accountability and

Whistleblower Protection ("OAWP"). J.A. 12. He argued that the deciding official, Mr. Hipolit, then the Deputy General Counsel for Veterans' Programs, was required to recuse himself, given his prior involvement in Mr. Brenner's case. J.A. 88; *see* J.A. 88 (noting that Mr. Hipolit had "sustained a decision concerning the written reprimand," "denied Mr. Brenner's grievance concerning his appraisal," and provided an interview and written statement to an EEO investigator in Mr. Brenner's EEO case), 1184–85 (Mr. Hipolit testifying that he both "gave a statement" to the investigator in the EEO case and was the deciding official for Mr. Brenner's removal).

In April 2018, Mr. Hipolit informed Mr. Brenner that his decision on Mr. Brenner's proposed removal was held in abeyance pending his OSC and OAWP cases. J.A. 12. On September 21, 2018, the OSC and OAWP notified Mr. Hipolit that the matters had been resolved. J.A. 12. On September 28, 2018, Mr. Hipolit upheld the proposed removal under 38 U.S.C. § 714, concluding that Charges I through III were supported by substantial evidence. J.A. 12; *see* J.A. 318–22 (Decision on Proposed Removal).

Mr. Brenner appealed his removal to the MSPB. J.A. 63. A hearing was held in December 2018. J.A. 1112; *see* J.A. 1112–1453 (Hearing Transcript). The MSPB affirmed the VA's removal action. J.A. 7. The MSPB applied 38 U.S.C. § 714, J.A. 12, and concluded that, "[i]n light of the evidence and testimony described, . . . the [VA had] met its burden of proof[] by substantial evidence," J.A. 31; *see* J.A. 12 (concluding that "to sustain an adverse action under 38 U.S.C. § 714, the VA must prove its charges by substantial evidence" (citing 38 U.S.C. § 714(d)(2)(A))), 14–31 (evaluating the presented evidence and testimony). The MSPB concluded that Mr. Brenner had not proven his affirmative defenses of: disability and age discrimination; reprisal for engaging in protected EEO activity; retaliation for whistleblowing; "harmful procedural error" by the "fail[ure] to abide" by VA removal procedures; and "due

process violation in light of [Mr. Hipolit's] refusal to recuse himself." J.A. 32 (citation omitted); *see* J.A. 32–54 (evaluating the evidence and testimony presented on Mr. Brenner's affirmative defenses). The decision became final in April 2019. J.A. 54.[5]

## DISCUSSION

Mr. Brenner argues, inter alia, that (1) the MSPB erred in concluding that the Act "prohibit[ed] [it] from reviewing the reasonableness of a penalty," Petitioner's Br. at 28 (capitalization normalized), and (2) the VA and MSPB "improperly applied the Act to [Mr. Brenner's] actions that occurred prior to the Act[,] essentially holding that the Act was retroactive," *id.* at 22 (capitalization normalized). We address each argument in turn.

## I. Standard of Review and Legal Standard

We will uphold a decision of the MSPB unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3). "We review the [MSPB's] determinations of law for correctness without deference to the [MSPB's] decision." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (citation omitted). We review the MSPB's findings of fact for substantial evidence. *See Crawford v. Dep't of the Army*, 718 F.3d 1361, 1365 (Fed. Cir. 2013). Substantial evidence is "such relevant

---

[5]  When Mr. Brenner filed his Federal Circuit Rule 15(c) Statement Concerning Discrimination on June 28, 2019, he abandoned his discrimination claims. Petitioner's Fed. Cir. R. 15(c) Statement, ECF No. 4; *see* Oral Arg. at 00:47–00:54, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-2032.mp3.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (quotation marks and citation omitted). "The petitioner bears the burden of establishing error in the MSPB's decision." *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019) (alteration omitted).

Under the Act, the VA may "remove, demote, or suspend a covered individual who is an employee of the [VA] if the Secretary determines the performance or misconduct of the covered individual warrants such removal, demotion, or suspension." 38 U.S.C. § 714(a)(1). "The procedures" provided in 5 U.S.C. Chapter 43 do "not apply to a removal, demotion, or suspension under [38 U.S.C. § 714]." *Id.* § 714(c)(3). Appeals are subject to an expedited review process, with the administrative judge and MSPB "uphold[ing] the decision of the Secretary . . . if the decision is supported by substantial evidence," *id.* § 714(d)(2)(A), (3)(B), and otherwise "in accordance with law," 5 U.S.C. § 7701(c)(2)(C); *see Sayers*, 954 F.3d at 1376. "[I]f the [VA's] decision . . . is supported by substantial evidence," the administrative judge and MSPB may "not mitigate the penalty prescribed by the [VA]." 38 U.S.C. § 714(d)(2)(B), (3)(C).

## II. The MSPB Erred in Concluding It Lacked Authority to Review the VA's Penalty Determination

The MSPB declined to consider the penalty imposed on Mr. Brenner. J.A. 13. The MSPB explained that it "ha[d] no authority to mitigate an action taken under [38 U.S.C. § 714] and the reasonableness of an imposed penalty . . . [wa]s immaterial." J.A. 13 (citing 38 U.S.C. § 714(d)(2)(B), (3)(C)); *see* 38 U.S.C. § 714(d)(2)(B), (3)(C) (providing that "[n]otwithstanding title 5 or any other provision of law, if the decision of the Secretary is supported by substantial evidence, [the MSPB] shall not mitigate the penalty prescribed by the Secretary"). Mr. Brenner argues that the MSPB "misconstrue[d] the Act" and that "the Act

does not prohibit the [MSPB] from reviewing the reasonableness of a penalty." Petitioner's Br. 28 (capitalization normalized). We agree with Mr. Brenner.

The MSPB erred when it concluded it lacked authority to review the penalty the VA imposed on Mr. Brenner. The Act prohibits the MSPB from "mitigat[ing] the penalty prescribed by the Secretary." 38 U.S.C. § 714(d)(2)(B), (3)(C). The MSPB understood this to mean not only that it "ha[d] no authority to mitigate an action taken under [38 U.S.C. § 714]," but also no authority to consider "the reasonableness of an imposed penalty." J.A. 13 (citing 38 U.S.C. § 714(d)(2)(B), (3)(C); *Douglas*, 5 M.S.P.R. 280). However, following the MSPB's decision in this case, we issued our opinion in *Sayers*. *See Sayers*, 954 F.3d. at 1370. "Our opinion in *Sayers* controls and mandates that review of the penalty must be included in the [MSPB's] review of [an] adverse action" under 38 U.S.C. § 714. *Harrington v. Dep't of Veterans Affairs*, 981 F.3d 1356, 1358 (Fed. Cir. 2020) (citing *Sayers*, 954 F.3d. at 1379).

In *Sayers*, we held that "[38 U.S.C.] § 714 requires the [MSPB] to review whether the Secretary had substantial evidence for his decision that an employee's actions warranted the adverse action." *Sayers*, 954 F.3d. at 1375; *see* 38 U.S.C. § 714(d)(2)(A) ("[T]he administrative judge shall uphold the *decision* of the Secretary *to remove, demote, or suspend an employee* under [38 U.S.C. § 714(a)] if the decision is supported by substantial evidence.") (emphases added). We explained that the MSPB "cannot meaningfully review th[e VA's] decision if it blinds itself to the VA's choice of action," as review of a "decision" encompasses not just its facts, but also the "decision to impose a certain penalty" based on those facts. *Sayers*, 954 F.3d. at 1375 (citation omitted). We reasoned that "[i]n the absence of a clearer statement than [38 U.S.C.] § 714(d)(2)(B), which prohibits the [MSPB] from *mitigating* a penalty supported by substantial evidence, we should not presume the prohibition of *all review* of the penalty to ensure its legality." *Id.*

at 1376 (emphases in original); *see Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 778 (1985) ("We have often noted that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." (internal quotation marks and citation omitted)).

Indeed, the Act encompasses MSPB review of an agency's action for accordance with law, including whether the Secretary's "final decision with respect to a removal, demotion, or suspension under [38 U.S.C. § 714]" provides "specific reasons" for the chosen penalty.    38 U.S.C. § 714(c)(2); *see id.* § 714(d)(1) (providing for "[e]xpedited review" by "the administrative judge" and MSPB "under [5 U.S.C. § 7701(b)(1)]"); *see also* 5 U.S.C. § 7701(c)(2)(C) (providing that, "[n]otwithstanding" whether the decision is supported by substantial evidence, "the agency's decision may not be sustained" by the MSPB, if "the decision was not in accordance with law").  Further, the Act expressly provides that this court review the agency action for accordance with law, abuse of discretion, and arbitrary and capricious decision making.  *See* 38 U.S.C. § 714(d)(5)(A) (providing for appeal of "a decision of the [MSPB]" to "the [U.S.] Court of Appeals for the Federal Circuit pursuant to [5 U.S.C. §] 7703"); *see also* 5 U.S.C. § 7703(c) (providing that the "Federal Circuit . . . shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be," inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  An agency abuses its discretion where, inter alia, "the decision . . . represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005); *see Robinson v. Dep't of Veterans Affairs*, 923 F.3d 1004, 1016–17 (Fed. Cir. 2019) ("We will defer to the judgment of the agency regarding the penalty unless it appears totally unwarranted in the circumstances such that it constitutes an abuse    of    discretion."    (internal    quotation    marks,

alterations, and citation omitted)).  A decision is arbitrary and capricious where the agency fails to articulate a "rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  Therefore, "[t]he plain meaning of [38 U.S.C.] § 714, when considered in its entirety, conveys that when determining whether the decision is supported by substantial evidence, the [MSPB] (or administrative judge) must necessarily consider the agency's penalty choice as part of that review." *Sayers*, 954 F.3d at 1376 (internal quotation marks omitted); *see Harrington*, 981 F.3d at 1358 (similar).

Further, *Sayers*'s understanding of the Act is consistent with Congressional intent, balancing "the overall intent of the Act" to "make it easier and faster for the VA to penalize employees for misconduct" while "maintain[ing] due process protections for employees, including the opportunity to appeal the Secretary's removal decision." *Sayers*, 954 F.3d at 1376–77 (citing 163 CONG. REC. S3268–80 (daily ed. June 6, 2017) (remarks of Sens. Nelson, Rubio, and Tester)); *see, e.g.*, 163 CONG. REC. at S3276 (remarks of Sen. Nelson) ("I also believe that it is important to protect the rights of the employees who may have been wrongly terminated, especially at the lower levels, by giving them the opportunity to appeal a supervisor's decision to fire them.  This bill we are going [to] pass does that.").  *Sayers* is also consistent with "basic precepts of administrative law and judicial review" and the "historical practice of reviewing the penalty in adverse action decisions." *Sayers*, 954 F.3d at 1377–78.  By excluding the penalty imposed from the scope of review, "an agency could remove an employee for an extremely trivial offense," e.g., "theft of a paperclip," "so long as substantial evidence supports that the

employee actually stole a paperclip." *Id.* at 1378.[6] "[A]llow-ing the agency to remove an employee for the tiniest inci-dent of misconduct so long as the agency could present substantial evidence that the trifling misconduct oc-curred—could gut due process protections in a way Con-gress did not intend." *Id.* at 1377 (internal quotation marks omitted). Similarly, "[t]he longstanding acceptance of penalty review, with or without mitigation authority, comes with good reason: it avoids absurd, unconstitutional results." *Id.* at 1378.

---

[6] This hypothetical comes from *Mogil v. Department of Veterans Affairs*, 769 F. App'x 920 (Fed. Cir. 2019), where we flagged that the VA's understanding of 38 U.S.C. § 714 as precluding review of the penalty imposed, would "g[ive] the Secretary essentially unfettered discretion to re-move an employee for any reason, no matter how minor, provided substantial evidence shows that the employee committed the charged misconduct." *Mogil*, 769 F. App'x at 923. We noted that "[i]f, for example, an employee was caught improperly using a paper clip purchased by the gov-ernment for personal use, the Secretary could determine that conduct warrants removal, even if the employee up to that point received perfect evaluations and had a spotless disciplinary record," and the MSPB "would have no author-ity to hold this penalty unreasonable and remand to the VA for a new penalty assessment." *Id.* We explained that "[s]uch an interpretation would be a dramatic shift in how the [MSPB] reviews adverse actions against other federal employees," "does not necessarily flow from the elimination of the [MSPB]'s ability to mitigate a penalty," and may pre-sent "potential constitutional concerns with regard to the Takings Clause and Due Process Clause." *Id.* (citation omitted). We, however, declined to reach the issue because, in *Mogil*, "any error in interpreting [38 U.S.C.] § 714 was harmless." *Id.*

Here, Mr. Brenner was removed from his position at the VA pursuant to 38 U.S.C. § 714. J.A. 8. In reviewing his appeal, the MSPB did not consider the penalty, only whether the underlying charges were supported by substantial evidence. J.A. 13–15, 24–26. This was not in accordance with law. Under 38 U.S.C. § 714, the administrative judge and MSPB must "review for substantial evidence the entirety of the VA's removal decision—including the penalty—rather than merely confirming that the record contains substantial evidence that the alleged conduct leading to the adverse action actually occurred." *Sayers*, 954 F.3d at 1379. Because the MSPB has neither the authority to "independent[ly] . . . set penalties," *Lachance v. Devall*, 178 F.3d 1246, 1248 (Fed. Cir. 1999), nor the authority to "mitigate the penalty prescribed," 38 U.S.C. § 714(d)(2)(B), (3)(C); *see Lachance*, 178 F.3d at 1260 (explaining that the MSPB's mitigation authority is generally the authority to "mitigate the agency's original penalty to the maximum reasonable penalty when it finds the agency's original penalty too severe"), if the MSPB concludes that the VA's removal decision is unsupported by substantial evidence, the MSPB should remand to the VA for further proceedings, *cf. Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1370 (Fed. Cir. 2019) (having "vacat[ed] the [MSPB's] decision as to the reasonableness of [a] penalty" under Chapter 75, instructing that, on remand, "the [MSPB] must consider whether the penalty of removal may be sustained or whether remand to the agency is necessary to reassess the appropriate penalty").[7]

---

[7]    The Government asserts that "it is difficult to see how the [MSPB] is to determine whether the Secretary's non-factual choice of a particular penalty is supported by substantial evidence." Respondent's Br. 48 (emphasis and internal quotation marks omitted). The Government's

The Government's primary counterargument is without merit. The Government acknowledges that *Sayers* "states that '[t]he plain meaning of § 714, when considered in its entirety, conveys that . . . the [MSPB] (or administrative judge) must necessarily consider the agency's penalty as part of [its] review.'" Respondent's Br. 44 (quoting *Sayers*, 954 F.3d at 1376) (first alteration in original). The Government, nonetheless, argues that *Sayers* is not dispositive here. *Id.* First, the Government argues that "the portion of . . . *Sayers* that discusses review of the penalty appears to be [obiter] dicta" because, in *Sayers* "the case was remanded" not for the agency's failure to consider the penalty, but "because the agency had" impermissibly "applied the statute" retroactively. *Id.* The Government is mistaken. In *Sayers*, we could not conclude that the Act had impermissible retroactive effect without first determining the Act's actual "meaning and effect." *Sayers*, 954

---

confusion is unfounded. "The statutory phrase 'substantial evidence' is a 'term of art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court.'" *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 301 (2015) (quoting *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)). "Th[e] [substantial evidence] standard goes to the reasonableness of what the agency did on the basis of the evidence before it." *Carlo Bianchi*, 373 U.S. at 715. It asks "whether the evidence relied upon by the trier of fact was of sufficient quality and substantiality to support the rationality of [its] judgment." *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 282 (1966); *see Burlington*, 371 U.S. at 168 (providing that, under the substantial evidence standard, "[t]he agency must make findings that support its decision" and "articulate [a] rational connection between the facts found and the choice made," particularly where the agency chooses between "vastly different remedies with vastly different consequences").

F.3d at 1374 (citing 38 U.S.C. § 714); *see Martin v. Hadix*, 527 U.S. 343, 357–58 (1999) ("The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." (internal quotation marks and citation omitted)). "When an opinion issues for the [c]ourt, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). Thus, *Sayers*'s discussion of penalty review is not obiter dicta. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."). In short, "*Sayers* controls and mandates that review of the penalty must be included in the [MSPB's] review of the adverse action." *Harrington*, 981 F.3d at 1358.

Second, the Government asserts that *Sayers's* holding concerning penalty review does not extend to Mr. Brenner's removal because, unlike the petitioner in *Sayers* who was removed for misconduct, "[Mr. Brenner] was removed for poor performance." Respondent's Br. 45. This argument is unpersuasive. It is without basis in the Act, which draws no distinction between the procedures and protections afforded an employee removed for poor performance, misconduct, or some unhappy combination of both. *See generally* 38 U.S.C. § 714. In particular, it fails to acknowledge that the Act allows for the MSPB to review the VA's action for "accordance with law," 5 U.S.C. § 7701(c)(2)(C); *see* 38 U.S.C. § 714(d)(1), and expressly provides for Federal Circuit review of an agency's action for accordance with law, abuse of discretion, and arbitrary and capricious decision making, *see* 38 U.S.C. § 714(d)(5)(A); *see also* 5 U.S.C. § 7703(c), regardless of whether the penalty is imposed for misconduct or poor performance.

Third, the Government argues that we should, instead, extend our analysis of Chapter 43 in *Lisiecki* to

Mr. Brenner's case in abrogation of *Sayers*. Respondent's Br. 46–47; *id.* at 45–46 (stating that while *Sayers* expressly "rejected the [Government's] argument that [§] 714(d)(2)(A)" should be "interpreted the same way that the [c]ourt interpreted similar language from Chapter 43 in *Lisiecki*," the Government "respectfully disagree[s] with the [c]ourt's analysis in *Sayers*"). This argument is misplaced. *See Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014) ("[A] panel of this court—which normally sits in panels of three, and not en banc—is bound by the precedential decisions of prior panels unless and until overruled by an intervening Supreme Court or en banc decision."). It is also incorrect. "Different concerns governed *Lisiecki*," such that "the reasoning behind *Lisiecki* cannot apply given the different procedural protections in [38 U.S.C.] § 714 removals." *Sayers*, 954 F.3d at 1379. Specifically, "the reasoning undergirding *Lisiecki* arises from the specific circumstances of [C]hapter 43 adverse actions," which have both "a narrow focus" and other procedural protections "not applicable to § 714." *Id.*; *see id.* (noting that porting *Lisiecki*'s reasoning into 38 U.S.C. § 714 removals presents "constitutional concerns" as Chapter 43 "provide[s] more pre-termination due process"). Accordingly, the MSPB erred when it concluded that the Act precluded, rather than required, review of the penalty the VA imposed on Mr. Brenner.

## III. The MSPB Erred in Applying the Act Retroactively

The MSPB concluded that "to sustain an adverse action under 38 U.S.C. § 714, the VA must prove its charges by substantial evidence." J.A. 12 (citing 38 U.S.C. § 714(d)(2)(A)). The MSPB then found that the VA had substantiated Charges I and III—"unacceptable performance in [the] critical element" of "Timeliness," J.A. 14, for the rating periods "covering October 1, 2016[,] through September 30, 2017," J.A. 15, and "beginning October 1, 2017," J.A. 24, respectively—by substantial evidence, J.A. 24, 26. The MSPB further found that the VA had

substantiated Charge II—"unacceptable performance in [the] critical element [of] Professional Responsibility and Accountability[] for the rating period covering October 1, 2016[,] through September 30, 2017"—by substantial evidence. J.A. 26. Mr. Brenner argues that the MSPB and VA "improperly applied the Act . . . retroactive[ly]" to conduct that occurred "prior to [enactment of] the Act." Petitioner's Br. 22 (capitalization normalized). We agree with Mr. Brenner.

The MSPB erred in applying the Act retroactively. In *Sayers*, "we held that [38 U.S.C.] § 714 does not apply to proceedings instituted based on conduct occurring before its enactment." *Harrington*, 981 F.3d at 1357; *see Sayers*, 954 F.3d at 1372 (holding that "Congress did not authorize [38 U.S.C. § 714's] retroactive application"). Here, the VA removed Mr. Brenner pursuant to the Act. J.A. 70 (Proposed Removal) (proposing removal "[u]nder the [a]uthority of 38 U.S.C. § 714"); *see* J.A. 318 (Decision on Proposed Removal) (upholding Proposed Removal "[u]nder the [a]uthority of 38 U.S.C. § 714"). The MSPB reviewed that action under the Act. J.A. 8 (summarizing the applicable law "under the provisions of the [Act]"). These decisions were based largely on conduct that occurred before the effective date of the Act. *Compare* Act, 131 Stat. at 862 (providing an effective date of June 23, 2017), *with, e.g.*, J.A. 72–73 (Proposed Removal) (in support of Charge I, citing thirty-one instances where Mr. Brenner did not reply to DMC requests in a timely manner, with twenty-five of the thirty-one requests occurring prior to the effective date of the Act, and two instances where Mr. Brenner did not timely respond to VA attorney requests after the effective date of the Act), 74–76 (in support of Charge II, citing Mr. Brenner's scheduling error and failure to immediately report that error in May 2017 before the effective date of the Act, and Mr. Brenner backdating seven GCLAWS entries in September 2017, after the effective date of the Act), 76–79 (in support of Charge III, citing thirty-six instances in

which Mr. Brenner did not reply to DMC requests in a timely manner after the effective date of the Act).[8] Accordingly, the MSPB erroneously applied the Act to conduct that occurred prior to the Act's effective date.

The Government's counterarguments are unpersuasive. First, the Government argues that *Sayers*'s holding

---

[8]    Further, for Charges I and III, alleging untimeliness, Mr. Hipolit noted before the MSPB, and the Government acknowledges here, that Ms. Oddo's proposed removal articulated and applied the incorrect standard to determine whether Mr. Brenner's responses to the DMC were, in fact, untimely. Respondent's Br. 19–20 (citing J.A. 16, 1193); *see* J.A. 1192–93, 1195 (Mr. Hipolit, testifying that the VA had applied the incorrect standard to determine timeliness). Specifically, while Ms. Oddo asserted that Mr. Brenner had not responded in a timely manner under the DMC's legal services agreement because Mr. Brenner had not responded within seven days of receiving a request for legal advice, J.A. 70–73, 76–79, the DMC's legal service agreement with the OGC provides that, "absent exigent circumstances (e.g., [a] novel or complex issue or, conversely, a time-sensitive issue), the assigned OGC office will provide a substantive response within seven . . .days of receipt of the facts and documents (as applicable) supporting [a DMC] request [for counsel]," not within seven days of receipt of the DMC request itself. J.A. 16 (quoting J.A. 556); *see* J.A. 552–67 (DMC and OGC Service Level Agreement). That is, the VA has not proven that Mr. Brenner was actually untimely. The MSPB nonetheless affirmed. J.A. 24, 26. This was in error. The burden is on the agency to "prove all of the elements" of the alleged charge. *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994). On remand, the MSPB should, applying the correct standard, consider whether substantial evidence supports these charges.

"regarding retroactivity should not be extended to invalidate Mr. Brenner's removal," Respondent's Br. 28, because "Mr. Brenner's removal resulted from a pattern of poor performance that began before the Act was passed" and "became worse" after the Act was passed, *id.* at 26–27 (emphasis omitted). This argument is without merit. Under 38 U.S.C. § 714, the Secretary's "final decision with respect to a removal, demotion, or suspension under [38 U.S.C. § 714]" must be supported with the "specific reasons therefor." 38 U.S.C. § 714(c)(2). "Absent the articulation of specific reasons, agency action is ineffective as it does not comply with statutory requirements." *Lachance*, 178 F.3d at 1257–58 (discussing 5 U.S.C. § 7513(b)(4), which also requires that an agency articulate "specific reasons" for its adverse action). Further, those specific reasons must be supported by substantial evidence. *See* 5 U.S.C. § 7703(c)(3); 38 U.S.C § 714(d)(2)(A), (3)(B). Where the specific reasons are repudiated or the evidence underlying them was impermissibly considered, *Sayers*, 954 F.3d at 1372 (explaining that 38 U.S.C § 714 does not "apply retroactively to conduct that took place before its enactment"), the MSPB must "scrutinize carefully the appropriateness of the penalty imposed," *Quinton v. Dep't of Transp.*, 808 F.2d 826, 829 (Fed. Cir. 1986); *see Sayers*, 954 F.3d at 1378 (explaining that, where "the [VA] alleges several specifications supporting a charge that merits removal, but only meets its burden of showing substantial evidence for the most minor specifications," the Secretary's charges and decision to remove may be unsupported by substantial evidence (citation omitted)). Here, the MSPB impermissibly considered evidence predating the enactment of the Act, irrespective of whether Mr. Brenner's performance worsened after its enactment.

The Government cannot have it both ways. If the VA seeks to remove Mr. Brenner for conduct prior to the effective date of the Act, it must proceed in accordance with Chapter 75 or Chapter 43. *See Lovshin*, 767 F.2d at 843

(allowing for "mixed" Chapter 43 and Chapter 75 cases). If the VA seeks to remove Mr. Brenner under the expedited procedures of 38 U.S.C. § 714, it may only consider events that occurred after the effective date of the Act. *See Sayers*, 954 F.3d at 1372 (explaining that 38 U.S.C § 714 does not "apply retroactively to conduct that took place before its enactment"). Put simply, Mr. Brenner "is entitled to the legal protections in place during the period in which the alleged [poor performance or] misconduct occurred[.]" *Id.* at 1381.

Second, the Government argues that *Sayers*'s holding "regarding retroactivity . . . should not preclude the VA from removing Mr. Brenner because applying the Act to a performance-based removal does not significantly change the administrative procedures . . . applicable in a Chapter 43 removal based on poor performance[.]" Respondent's Br. 31. According to the Government, because both Chapter 43 and 38 U.S.C. § 714 "contain[] the substantial evidence test and do[] not allow for mitigation of the penalty," any differences between the two are "more akin to the types of procedural rules discussed in *Landgraf*," and thus "do not raise concerns about retroactivity." *Id.*; *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 (1994) ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."). This argument is unpersuasive.

Mr. Brenner had "a property interest in [his] continued employment." *Stone v. F.D.I.C.*, 179 F.3d 1368, 1374 (Fed. Cir. 1999); *see Landgraf*, 511 U.S. at 271 (explaining that the "presumption against statutory retroactivity" applies to "new provisions affecting . . . property rights"). Even if we assume that the VA would have removed Mr. Brenner under Chapter 43 in the absence of 38 U.S.C. § 714, *see Lovshin*, 767 F.2d at 842 (explaining that an agency may also remove an employee for poor performance under Chapter 75 if the "agency can meet the heavy burdens of Chapter 75 and can show substantive compliance with merit principles"), "[e]mployees enjoy much greater pre-termination

due process protections under [C]hapter 43 than under [38 U.S.C.] § 714," *Sayers*, 954 F.3d at 1379; *see Martin*, 795 F.2d at 997 (enumerating the Chapter 43 requirements for removal). These protections are not merely procedural. They are "the *quid pro quo*" for the agency's greater discretion under Chapter 43. *Lovshin*, 767 F.2d at 842. Section 714 lacks the protections of Chapter 43. *See* 38 U.S.C. § 714(c)(3) ("The procedures under [C]hapter 43 . . . shall not apply to a removal, demotion, or suspension under this section."). Therefore, removal under the "expedited, less rigorous" procedures of 38 U.S.C. § 714, *Sayers*, 954 F.3d at 1374, rather than Chapter 43's "specific procedures," *Lovshin*, 767 F.2d at 842, for conduct that occurred prior to the effective date of the Act, "attaches new legal consequences" to that conduct and thereby gives the Act impermissible retroactive effect, *Landgraf*, 511 U.S. at 270.

The VA erroneously applied the Act retroactively. Accordingly, the MSPB's affirmance of the VA's action is not in accordance with law.[9] We "vacate [Mr. Brenner's] removal and remand to the [MSPB] for further proceedings" to consider whether the "VA's removal decision" under 38 U.S.C. § 714—"including the penalty"—is supported by

---

[9]    Because we conclude that the MSPB's interpretation of the Act was incorrect, we do not reach Mr. Brenner's arguments that the MSPB's interpretation of the Act violated his Due Process and Equal Protection rights. Petitioner's Br. 11–12, 25–28; *see Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the [c]ourt will decide only the latter."); *Sec. People, Inc. v. Iancu*, 971 F.3d 1355, 1361 n.3 (Fed. Cir. 2020) ("If the appellant succeeds on the merits of its nonconstitutional arguments, the constitutional question may become moot.").

substantial evidence on the evidence of record that post-dates the Act. *Sayers*, 954 F.3d at 1373, 1378; *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (providing that "remand to the agency for additional investigation or explanation" is appropriate where "the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it"). If the Government wishes to rely on evidence of record that predates the Act, it must proceed in accordance with Chapter 75 or Chapter 43.

## CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive.[10] Accordingly, the Final Decision of the Merit Systems Protection Board is

## VACATED AND REMANDED

### COSTS

Each party to bear its own costs.

---

[10] Mr. Brenner also argues that the MSPB erred in rejecting his defense that Mr. Hipolit should have recused himself as the deciding official, given his prior knowledge and involvement in Mr. Brenner's case as a VA official. Petitioner's Br. 23. However, "[t]here is nothing inherently wrong with a deciding official's having background knowledge of an employee's prior work history or performance record" and "[n]othing in the [Act] limits the deciding official to being a neutral arbiter or requires that the deciding official be unfamiliar with the individual, the facts of the case, or the employee's prior conduct." *Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1354 (Fed. Cir. 2012); *see* 38 U.S.C. § 714. Accordingly, Mr. Hipolit's involvement was not a harmful procedural error.